CITY OF BURLINGTON, Appellant, v. BURLINGTON WATER
COMPANY, Appellee.

1. **Municipal Corporations**: CONTRACT WITH WATER COMPANY:
SPECIFIC PERFORMANCE. Where in an action by a city for specific
performance of its contract with a water company, the company set
up as a defense that the city had at times delayed in properly apply-
ing the water tax provided for by said contract, and had by ordinance
required the laying of pipes where they were not needed, *held*, that it
appearing that the tax was eventually applied as provided in said
agreement, and that in some instances the orders for new pipes were
not complied with by the company, the acts of the city did not excuse
the company's nonperformance of said agreement.

2. —— : —— : —— : The contract of the plaintiff with the
defendant provided that all water admitted into the company's mains
must be properly filtered, except when used in the extinguishment of
fires. Under said contract the defendant held an exclusive franchise,
had established its plant, had laid its pipes in the streets of the plain-
tiff, and private consumers had, at large expense, conducted the water
into their houses for domestic purposes. The defendant having failed
to supply the city with filtered water as agreed, *held*, that the plain-
tiff was entitled to have performance of said contract enforced by a
court of equity, an action for damages being inadequate, and a for-
feiture of the exclusive franchise held by the defendant being equally
futile, as it would necessitate the erection of new works.

3. —— : —— : —— . The ordinance granting said franchise to
the defendant provided, that the capital stock of the defendant
should be three hundred thousand dollars, of which no more than ten
per cent. should be paid up, unless in pursuance of other provisions of
said ordinance, or "in obedience to the order of some court of com-
petent jurisdiction." *Held*, that the order of court here provided for
referred to any order or decree rendered in a case like this where it
appeared to be necessary to call in the stock subscriptions to enable
the defendant to comply with its contract; and that, under the facts of
this case, the means necessary to enable the defendant to properly
filter the water supplied to the plaintiff should be raised by this
method, rather than by an issue of bonds or an increase of the cap-
ital stock as was permitted by said ordinance.

*Appeal from Des Moines District Court.*—HON. C. H.
PHELPS, Judge.

WEDNESDAY, OCTOBER 12, 1892.

THE plaintiff is a city of the first class, and the defendant is a corporation engaged in the business of furnishing water to the city for the purpose of extinguishing fires, and to its inhabitants for domestic uses. It is claimed by the city that the defendant has failed to comply with a certain ordinance of the city in the nature of a contract between the parties, by which the said defendant bound itself to properly filter the water furnished to the city and its inhabitants at all times, exeept when used in the extinguishment of fires, and has failed to comply with the provisions of said ordinance, in that it has refused to make the necessary extensions of its water pipes in order to furnish the city with water for fire purposes, and the inhabitants with water for private use. The plaintiff demands that the defendant be required, by a proper decree, to comply with these provisions of the ordinance by raising money from the available assets of the defendant, and applying the same to the performance of its contract. There was a trial upon the merits, and a decree dismissing the petition, and the plaintiff appeals. *Reversed.*

*John M. Mercer, Seerley & Clark* and *Hedge & Blythe,* for appellant.

*Smyth, Rumple & Lake* and *Power & Huston,* for appellee.

ROTHROCK, J.—I.   The defendant adopted articles of incorporation in the year 1877. The object and

1. MUNICIPAL corporations: contract with water company: specific performance.
purpose of the incorporation, as stated in said articles, was "to construct and operate a system of waterworks in and for the city of Burlington, in the state of Iowa." Other provisions of said articles need not be referred to further than to say that the capital stock

was fixed at three hundred thousand dollars, in shares of one hundred dollars each, and that "calls for installments upon the amount of stock subscribed may be made from time to time by the board of directors, but such installments shall never exceed two per cent. thereon in any one month; nor shall any such installments be called for, unless the same be needed to meet the wants of the company." Other provisions of the articles of incorporation are quite general, and are such as are usually adopted by corporations of like character. The ordinance referred to was passed on the seventeenth day of July, 1877. It is quite a lengthy instrument, and is in the nature of a contract between the city and the water company, to be binding on the parties when accepted by the defendant. This acceptance was made on the nineteenth day of July, 1877, and since that time the parties have been acting under said ordinance.

The franchise granted by the ordinance gave to the defendant the exclusive privilege of laying water mains and pipes in any part of the city for the term of twenty-five years. The ordinance further provided that the waterworks should not cost to exceed two hundred thousand dollars. The works established by the company were required to be such as were capable of delivering three million gallons of water daily, and so constructed and arranged as to furnish sufficient means for extinguishing fires without the aid of fire engines. It was further provided that a hydrant should be placed at each street crossing along the line of every water main placed by the company. Further provisions of the ordinance are as follows:

"Section 10. All that portion of the city which lies within the limits of the benefit of protection of the said waterworks shall be known as the 'Water District,' and the city council, from time to time, will by ordinance more specifically designate the boundaries or

extent of said district. And, except as hereinafter provided, a special tax of five mills on the dollar shall be annually levied upon all real estate, and upon all tangible personal property, which is properly taxable within such district for other purposes. This tax shall not be diminished until a surplus, as hereinafter contemplated, is found to exist; and shall, in conjunction with the earnings of said company, constitute what shall be known as the 'Water Fund.'

"Section 11. The said company, whenever the law and their circumstances will permit, may issue their bonds, not exceeding two hundred thousand dollars in amount, which shall be secured by a first mortgage upon their works. These bonds shall bear six *per cent.* interest *per annum*, which shall run not more than fifty years from their date. This interest shall have a preferred claim upon the water fund, and shall be paid by the city directly to the bondholders or their agents, without ever being under the control of the said company; and the sum of two thousand dollars per annum shall next be taken from this water fund, and appropriated to the purchase of some of the bonds aforesaid for cancellation, or to constitute a sinking fund in some other appropriate manner. Said bonds shall not be sold at less than par, without the consent of the city council; and, when their proceeds shall not be needed for immediate use, they shall be placed in the hands of a trustee, to be appointed by the city council with the assent of said company. The capital stock of said company shall be three hundred thousand dollars, of which amount the company may pay up in cash ten per cent. thereof, and no more, unless in pursuance of other provisions of this ordinance, or in obedience to the order of some court of competent jurisdiction.

"Section 12. From the said water fund there shall next be paid the current expenses of the said company, including the necessary repairs and improvements of

said waterworks, and including, also, all taxes that may be levied upon said waterworks, or upon the stock held by the stockholders in said company; provided, that no extravagant nor unreasonable expenses shall ever be incurred by said company, and, after the payment of all the amounts aforesaid, the remainder of said water fund may, as far as prudent and proper, be divided among the stockholders of said company, to the extent of twelve *per cent. per annum* of the amount actually advanced by them, respectively; provided, there shall be no dividend declared exceeding eight per cent. per annum upon any greater sum than said thirty thousand dollars.

"Section 13. Should the said water fund prove inadequate in any one year to meet all the foregoing claims upon it for that year, the deficit shall be made good out of any surplus that may remain in any subsequent year after the payment of the claims enumerated in the two preceding sections; and, should the said fund be more than sufficient for all the purposes aforesaid, the surplus, or so much thereof as can prudently be spared, may be added to the sinking fund aforesaid; or the rate of the special tax, as well as that of the water rents, may be diminished, or such surplus may be applied to the extension of the water district, or the improvement of the works—all as the city council shall determine.

"Section. 14. Whenever it is found expedient so to extend said water district as to require more means than are on hand for that purpose, the needful amount of new bonds may be issued. These bonds may be secured by a second mortgage upon said works, but shall in all other respects be regulated upon the same principles as are hereinbefore prescribed in the case of the first mortgage bonds, and the additional stock that may be needed for that purpose shall be disposed of in such manner as the board of directors of the said

company shall determine.

"Section 15.  As soon as the financial condition of the said city shall permit it to purchase and operate said waterworks, the city council, upon giving one year's previous notice, shall have the right to take possession of and control the same upon assuming all the duties and liabilities then devolving upon said company, and upon the termination of the franchise hereby created, unless the city itself, or some other party, with its consent, shall be able and willing to take the said works by relieving the said company of all its then existing duties and liabilities, then said franchise, and the rights and duties of both parties under it, shall continue as hereinbefore provided, until the said company shall be thus relieved from all such duties and liabilities, including the capital stock actually paid in.

"Section 16.  Should the current expenses of the said company, including the pay of its officers or agents, be deemed unreasonable by the city council, or should said council refuse to pass any ordinance which the said company may claim to be required by the eighth section of this ordinance, or should there be a disagreement between the said council and the said company for any other reason, the subject-matter of such controversy shall be submitted to arbitration; and, unless otherwise mutually agreed upon, the arbitrators in such cases shall consist of five disinterested members, two of whom shall be selected by the city council, two by the said company, and the fifth member by the four thus selected.  This tribunal shall proceed to adjust the matters in controversy in accordance with equity, and with the true spirit and intent of this ordinance, and their decision shall be binding and conclusive upon both parties to the said controversy.

"Section 17.  The said company shall keep books setting forth, in minute detail, every item of income

and expense it shall receive or incur, which books shall at any time be open to the inspection of any committee or other agent of the said city council; and at the end of every six months a report shall be made to the said council setting forth in the aggregate the amounts received from each separate source, and the amounts expended under the several heads of general or special expenditures, and an intentional failure to perform its substantial duty in this respect shall work a forfeiture of the franchise hereby created.

"Section 18. For the compensation above specified the said company shall furnish, at the several hydrants, all the water needed for the extinguishment of fires in any portion of the said city, within the water limits aforesaid, and shall be prepared to furnish water to the extent of their power, if needed at any fire that shall occur within said limits, within ten minutes after being notified of the breaking out of such fire. It shall also furnish all water that may be needed in any of the city offices and also all that may be needed for sprinkling the streets of the city, to the extent of thirty thousand gallons per day, along each mile of all the water mains in said city. It shall also supply all the water that may be needed for private use at rates not exceeding those fixed in the following section, it being understood that any party using water as aforesaid shall be at the expense of supplying the apparatus necessary for conducting the water from outside line of sidewalk to the point where it is to be used. And all the water admitted into said mains must be properly filtered, except when used in the extinguishment of fires.

"Section 19. The said company may fix its own rates of charges for water furnished to individuals or corporations; but, unless by a previous agreement of the parties, or by the special authority of the city council, no such charges shall be greater than shall be

found prevailing in some one of the cities of Des Moines, Davenport, Muscatine, Clinton, or Cedar Rapids in this state.

"Section 20. It is intended by this ordinance that the said company shall make an annual net dividend of twelve per cent. upon all the cash actually paid in upon their stock, and no more, as hereinbefore provided. But they must rely for the means of making such dividend entirely upon the water fund aforesaid. Nothing for this purpose, or for defraying any of the other expenses connected with said water works, shall ever be payable out of the proceeds of the general taxation in said city. But the special tax hereinbefore provided for shall never be so far diminished as to prevent the annual dividend of twelve per cent. by said company upon the cash payments on their stock, as hereinbefore contemplated; and a certificate shall be indorsed upon each of the bonds issued as aforesaid, stating the present assessed value of all the property upon which said special tax is to be annually levied, together with a stipulation that from the said water fund the city will pay the semi-annual interest upon said bonds, and also the sum of two thousand dollars annually into the sinking fund, before any money shall be taken out of said water fund for any other purpose. This indorsement shall be subscribed by the mayor of the city, and authenticated by the seal of said city, and thus create an irrepealable obligation in favor of the holders of those bonds, respectively."

The works were erected in substantial compliance with the ordinance. The thirty thousand dollars was paid in by the stockholders of the water company, and no part of the two hundred and seventy thousand dollars of stock taken has since been paid nor called for by the company. The city indorsed the bonds of the water company to the amount of two hundred thousand dollars with a stipulation that the semi-annual interest

on the bonds should be paid from the water tax. The bonds were sold by the water company, and, from that time to the present, the city has annually levied the five-mill tax, and the same has been applied to the purposes provided for in the ordinance; so that the interest on the bonds has been paid and bonds to the amount of nearly twenty-four thousand dollars have been taken up and paid. The stockholders have received their twelve per cent. dividend on the amount of the stock which they have paid, and some fifty thousand dollars has been paid for the operating expenses. All of these payments have been made from the five-mill tax levied by the city. When the works were put in operation, and for some years thereafter, the demand for water was such as that a filter which was then used was sufficient for the purposes intended; but for several years past, and since there has been an increase in the amount of water used, the filter has been wholly inadequate, and the water has been pumped up into the houses of the inhabitants of the city direct from the Mississippi river, without any attempt to filter it. There is no conflict in the evidence upon this question. To the end that the manner of performance of that part of the contract which requires that filtered water shall be furnished, we quote from the testimony of one of the witnesses:

"I reside on the West Hill, in the city of Burlington. Have lived in Burlington twenty years. My dwelling is at the corner of College avenue and Valley street, about twelve or fourteen blocks from the waterworks. I think it is about one hundred feet—I don't know exactly—above the river. I use the water furnished by the water company, and have used it for ten years, in the house. Have used it in our bathrooms, for washing purposes, and at the stable. Don't cook with it, and don't drink it, unless we have to. It is not clean water. It is not clean enough for bathing purposes. It is too dirty, even, for that. Compelled to

bathe in other water at times, because this water is so dirty. A number of times after turning the water off the bath tub would be slippery and slimy from the settling of the water. The tub was clean before it went in. Deposits were such as to make it slippery to stand on the bottom of the tub when the water was run off. It was clean before the water was there. This dirty water has been more frequent the last two years than any other time, and it is getting more frequent all the time. Used the water ten years ago up there. At that time it was very nice water. I cannot now locate the time, but back five years ago it was very satisfactory water. I have not noticed the water in any other part of the city. Three or four years ago was when this bad condition of the water became noticeable."

There is no evidence in the case in any manner in conflict with the testimony of this witness, and, on the face of the contract, there is and can be no question that the defendant has not for several years complied with this part of the contract.

The defendant complains that the city council has interfered by ordinances and by resolutions, and by the acts of its committees, with the execution and carrying out of the contract; that the council has passed ordinances and resolutions requiring the water mains to be laid in streets where there was not sufficient demand for water to justify the expense; that the city has withheld the five-mill tax, and has not paid it over promptly; that it has refused to pass ordinances presented by the water company to enable it to comply with the contract. These and other grievances are set up as a defense to the action. We have examined the evidence with care, and find no ground in any complaints made by the defendant for excusing it from a compliance with the contract. There may have been delay at times in properly applying the tax, but every dollar of it was eventually applied to the purposes provided by the

ordinance. It may be that the city council has at
times ordered pipes to be laid where they were not
required. But the evidence shows that in some of
these instances the defendant has failed to comply with
the order, and, although it is demanded in the petition
that the defendant be required to comply with these
orders, the evidence in the case is not sufficient to
authorize a decree requiring pipes to be laid in any
particular street. We do not understand counsel for
the appellant to so claim.

II. The real matter of complaint is that the
defendant fails and refuses to filter the water, and
2. —: —: —. the evidence shows that the default is a
substantial and continuing one; and the question
is, what is the remedy. The defendant's counsel claim
specific performance of a contract of this kind should
not be decreed, because a court of equity will not
take supervision of the enforcement of the obligation
of the defendant in the performance of continuous
duties involving personal labor and care which the
court cannot superintend. We think that it is com-
petent for courts to enforce obedience to the defend-
ant's undertakings, and that in the case at bar it
is the only effectual remedy. The defendant, under
its contract with the city, has its water pipes laid in the
streets, its plant is established, and private consumers
of water have, at large expense, tapped the pipes, and
conducted the water into their houses for domestic uses.
There is no adequate redress for a failure to filter the
water, except to compel the defendant to perform its
obligation to do so. An action for damages would be
wholly inadequate, and a forfeiture of the exclusive
right to maintain waterworks in the city would be
equally futile. It would involve the erection of new
works,—an undertaking not to be thought of as long
as equity affords a remedy against the defendant in the
nature of an action for specific performance.

It is claimed that filtering the water would be of no service to private consumers, because, in case of fire, the defendant has the right to pump unfiltered water, and that the inhabitants would therefore be compelled to use unclean water, even if a filter was used.   This is no reason why the defendant should not perform its contract.   The people would, at least, have clean water when there were no fires, or soon thereafter.

There are many other reasons urged why the defendant's default should not be excused.   We do not think it is necessary to refer to most of these reasons. They are well answered by the single consideration that the defendant's failure to filter the water is conceded, and the obligation to do so is a continuing one.   It was performed by the use of a filter when the works were first established.   If that filter proved insufficient to do the work as the city increased in population, and the demand for a supply of water became greater, it was the duty of the defendant to put in new machinery of sufficient capacity to perform its contract.

III.   There is only one real question in the case, and that is whether the defendant has the power to assess and call in enough of the unpaid subscription to its capital stock to put its works in condition to comply with its contract.   It is provided in the ordinance that "the capital stock of said company shall be three hundred thousand dollars, of which amount the company may pay up in cash ten per cent. thereof, and no more, unless in pursuance of other provisions of this ordinance, or in obedience to the order of some court of competent jurisdiction." It is claimed that this part of the ordinance prohibits the payment of more than ten per cent. of the stock; that there are no "other provisions" of the ordinance authorizing further payments; and that payment made under an order of court means an order made in an action by a creditor of the corporation.   It is true that

section 14 of the ordinance provides for the possibility of the issue of additional bonds and a second mortgage, and that additional stock may be subscribed and disposed of. But that method of raising additional money is not exclusive. Section 12 of the ordinance contemplates that more than thirty thousand dollars may be paid in, because it provides that no dividend exceeding eight per cent. per annum shall be paid upon any sum in excess of thirty thousand dollars. This has reference to the capital stock of three hundred thousand dollars.

The construction sought to be put upon the provision with reference to paying up the stock upon the order of a court appears to us to be rather too restricted. We think it should be held to refer to any order or decree of a court made in a case where it appears to be necessary to call in the stock subscriptions in order to enable the defendant to comply with its contract. This is just such a case. The defendant is a corporation, with a capital stock of three hundred thousand dollars. The subscribers to this stock paid in ten per cent. of their respective subscriptions in 1877, and have received *twelve per cent.* dividends thereon for each and every year since that time. The interest on all of its bonds has been paid, and no small part of the principal of the bonds has also been paid. All these payments have been sure and certain,—just as certain as the levy and collection of a valid tax could make them. If it has not the money to properly perform its contract, all that is necessary for it to do is to call on its stockholders to pay into the treasury of the corporation a sufficient per cent. of their subscriptions to enable it to furnish the people of the city with water suitable for some other purpose than sprinkling streets and lawns and putting out fires. That it has not complied with its contract with the city in this respect for several years is undisputed. Instead of doing this, it proposes to

float more bonds, and to carry on a system of water-works for a city of more than twenty-two thousand inhabitants, upon a capital of thirty thousand dollars, upon which its stockholders receive twelve per cent. per annum.

Our conclusion is that the court below should have ordered the defendant to comply with its contract by properly filtering the water, and that, if necessary, the capital stock should be assessed for a sum sufficient to comply with the order.  REVERSED.