## THE CRESTON WATERWORKS COMPANY v. THE CITY· OF CRESTON, Appellant.

| 101 | 687/ |
| 110 | 198 |
| 101 | 687 |
| 117 | 253 |
| 101 | 687 |
| 118 | 179 |
| 118 | 181 |
| 101 | 687 |
| 121 | 320 |
| ø121 | 328 |
| 101 | 687 |
| 124 | 81 |

**Municipal Corporation:** WAIVER OF STRICT PERFORMANCE: *Accept-*
1   *ance.* Under an ordinance constituting a contract between a
city and a water company, by which the company agreed to fur-
nish to the city and its inhabitants, water of good quality, and the
city agreed to pay the company for the maintenance of a certain
number of fire hydrants, the city council had power, acting in
good faith, and for the best interests of the city, to waive strict
compliance with the contract as to the quality of the water fur-
nished; and where it audited the bills of the company under the
contract during an unusual season, which affected the source of
the supply, and during which the water furnished was not of the
required standard purity, its action constituted an acceptance of
the water furnished, which was binding on the city.

**Water Rent:** PAYMENT OF: *Construction of statute.* The power of
2   a city or town to contract with an individual or company operat-
ing waterworks "to supply said city or town with water for fire
purposes, and for such other purposes as may be necessary for the
health and safety, and to pay therefor such sum or sums as may
be agreed upon between said contracting parties," given by
McClain's Code, section 641, is not limited by section 643, provid-
ing that a city or town making such a contract shall levy and col-
lect a special tax on property within the limits of the benefit or
protection afforded, sufficient to pay the water rents so agreed to
be paid, but not exceeding five mills on the dollar for any one
year; and when the fund arising from such special tax is insuffi-
cient to meet the obligation of the city under its contract, it may
meet the deficiency from its general revenues.

FIXING TAX DISTRICT: *Construction of statutes and ordinances.*
3   Under the provision of McClain's Code, section 643, requiring the
city council to fix the limits of the benefit or protection afforded
by waterworks each year, before levying the special tax on the
property within such limits, to pay the water rents therefor, an
ordinance by which a city entered into a contract with a water-
works company to maintain fire hydrants, is not invalid because
it fixes a distance of two thousand feet from a hydrant as a
standard by which such limits shall be determined, and provides
that such limits shall not be lessened, while the company supplies
water, where it also provides for the fixing of such limits, annually,
by the council.

**Water Rates Ordinance:** EXCLUDING FUTURE REGULATION. An ordinance, providing for furnishing water to a city by a private corporation, which grants such corporation the right to charge and collect during the continuance of the privilege, from the consumers, certain specified rates, or "other rates that may be established" by such corporation and approved by the council, is not objectionable as attempting to exclude future regulation of the rates charged, in violation of Acts Twenty-second General Assembly, chapter 16, section 1.

**Debt:** WATER RENT: *Constitutional law.* The annual rental, which a city agrees to pay for water furnished it by a waterworks company, is not an indebtedness, within the meaning of the Iowa Constitution, fixing a maximum limit for the indebtedness of a city.

*Appeal from Union District Court.*—HON. H. M. TOWNER, Judge.

SATURDAY, APRIL 10, 1897.

THIS is an action to recover water rents alleged to be due from the defendants for water furnished during the year 1894, by the plaintiff, in pursuance of the provisions of an ordinance of the defendant city known as "Ordinance No. 128." The defendant answered, setting up a number of defenses, of which those insisted upon will be hereafter noticed. Two cases in equity, then pending against this plaintiff,— one to enjoin payment by the city of water rent for the year 1893, and the other to declare said ordinance illegal,—were, by consent, consolidated, and submitted with this case. The grounds for the relief asked in those cases are similar to those alleged as defenses to this action. The cases thus consolidated were tried as in equity, and judgment rendered in favor of the plaintiff for the amount claimed, and decree dismissing both petitions in equity. The defendant appeals.—*Affirmed.*

*John B. Sullivan, Earle & Prouty, Sullivan & Sullivan,* and *N. W. Rowell* for appellant.

*Maxwell & Winter, Smith McPherson,* and *John N. Baldwin* for appellee.

GIVEN, J.—I.   The record in this case is unavoidably voluminous, but it is not necessary that we consume space to set out even a summary of it.   There is no question but that ordinance No. 128, was enacted by the defendant city, and accepted by the plaintiff company, and that, but for the matters alleged in these cases against the plaintiff, it would be entitled to the judgment and decree appealed from.   Our inquiry being as to these matters, we will proceed to consider the claims of the appellant, made in argument, in the order made, and, in connection therewith, so much of the issues and proofs as may be necessary to an understanding of each question argued.   We may say here that we have been very much aided in our investigation by the able opinion of the learned judge who heard the case.

II.   Said ordinance provides, in effect, that plaintiff shall furnish said city and its inhabitants with "wholesome, clear, potable water for all purposes," the city to pay rent for one hundred and forty hydrants at a rate of seven thousand eight hundred dollars per annum.   Defendant states its first contention as follows:   "The plaintiff is not entitled to recover, because the water furnished did not comply with the contract sued upon."   The evidence shows quite conclusively that, during a part of the year 1894, especially in the summer and fall months, the water was not as required, and that it contained such an amount of vegetable matter as to be unfit for drinking or domestic use.   Defendant's counsel state the law to be "that one suing to recover

the contract price must show full compliance with the contract, or such conduct on the part of the promisee as amounts to an acceptance of the thing done or furnished as being a full compliance therewith." We have seen that the appellee did not fully comply with the contract as to the quality of the water. Therefore it only remains to inquire whether there was an acceptance of that furnished, as a full compliance with the contract. The facts are that appellee kept the required supply in quantity and pressure in the hydrants during all the year, and that the city received and used the supply for the purposes and in the manner prescribed. No complaint was made by any of the representatives of the city of the water suppplied, as to quality or otherwise, and the city council voted orders, from time to time, to pay hydrant rents. On the fourteenth of January, 1895, the city council acted upon plaintiff's bill for hydrant rent for the last half of 1894. They did not even then, though this suit was pending, object because of the quality of the water, but, acting upon the theory that they could not pay more than was realized from the special tax for that purpose, voted to pay that amount. *Carthan v. Lang*, 69 Iowa, 384 (28 N. W. Rep. 650), is cited to show that neglect of duty on the part of the city's officers, or a failure to protest, will not constitute an acceptance. Other authorities are cited to the effect that the nature of the article delivered must be considered, and it is argued that under the circumstances of this case the city should not be held to have accepted the water as a compliance with the contract, because it did not complain. We recognize the force of the argument if acceptance rested merely on silence, but we think the city council was neither negligent nor silent, but, alive to the facts and the best interests of the city and its people, wisely concluded to receive the water as a compliance

with the contract. Let us note briefly the circumstances that surrounded the parties. The remoteness of the city from any large stream or natural body of water rendered it difficult to procure a supply of water, and efforts that had been made by sinking wells had failed. These parties agreed to try the plan of making an artificial lake or reservoir to collect the water from small streams and surface drainage, and the plan was carried out at a large expense to appellee, and to the approval of the city. Owing to the protracted drought in 1894, the body of water accumulated in the reservoir became greatly reduced (though ample in quantity to supply the city), and the impurities therein more dense and difficult to remove. The city was without any other source of supply, and appellee without any other means of supplying it, than from this lake. It was under these circumstances that appellee continued to furnish, and appellant to receive without complaint, water which the officers of both doubtless knew was not strictly of the quality contracted for. Without enlarging further upon the facts, we will say that we are satisfied that the city officers intended to and did in good faith accept the water furnished during 1894, as a substantial com pliance with the contract. *City of Burlington v. Burlington Water Co.*, 86 Iowa, 266 (53 N. W. Rep. 246), and other authorities are cited to show that the city could have brought an action to compel specific performance of this contract. It does not follow from this that the city authorities might not, under the circumstances that existed, have accepted the water furnished, as a compliance with the contract. The learned district judge found that, while appellee's appliances for purifying the water were sufficient under ordinary conditions, they were not under the conditions that existed during part of 1894; that to maintain the supply to

the city, the means in use had to be forced, and that additional means of filtering the water would have remedied that. These facts would be potent if the action was, as in the *Burlington Case*, to compel specific performance; but they do not tend to show that the city officers did not, by affirmative action, wisely accept the water furnished during 1894, as a substantial compliance with the contract. Appellant cites and relies largely upon *Winfield Water Co. v. City of Winfield*, 51 Kansas, 104 (33 Pac. Rep. 714), to the effect that in an action upon a contract, the plaintiff must prove a compliance and cannot recover on the *quantum meruit*. This action is on the contract, and compliance has been proven by showing acceptance. That the city council might, in good faith, and in the interest of the city and its inhabitants, waive a strict compliance with the contract, and accept the water furnished, see 1 Beach, Pub. Corp., section 694; *City v. Hays*, 93 Pa. St. 72; Dillon, Mun. Corp., section 477.

III. Said ordinance provides for levying a special tax in accordance with section 8, chapter 78, Acts Fourteenth General Assembly, and that, if the tax so levied and collected be insufficient at any time to pay the water rentals, as provided, as the same are earned, "then the city hereby agrees to annually or semi-annually set apart in money out of its general funds and annual revenues, a sufficient sum or sums to keep up said water fund so that said water rentals can be promptly paid when due." The city realized four thousand, nine hundred and twenty-five dollars and sixty-five cents from this special levy, for 1894, being two thousand, eight hundred and seventy-five dollars and thirty-five cents less than the amount agreed to be paid. Appellant contends that "the contract for rental is void, at least as to the excess beyond the proceeds of a five-mill tax upon the taxable

property within the limits of benefit or protection."

Appellant insists that said section 8, limits the power of the city to contract for water rentals to the amount that may be realized from the special tax authorized, and appellee insists that the limitation is not upon the power to contract, but simply as to the amount for which, and the territory upon which, the special tax may be levied. In the Revision of 1860 (section 1059), power was given to incorporated cities and towns to erect waterworks, and to charge consumers a sufficient amount to defray the expenses of conducting and repairing the waterworks, and for the creation of a sinking fund for the liquidation of the debt created in erecting the works. We do not find that, prior to the enactment of said chapter 78, any other provision was made for providing or paying for water supply by cities and towns. Said chapter was, at least so far as we are now called upon to consider it, incorporated into the present Code, and we will refer to it as found in McClain's Annotated Code. In addition to the power conferred in section 615, "to protect the property of the incorporation and its inhabitants," power is given in section 639, to erect water, gas, and electric light works, when approved by a majority vote of the electors. Section 640 provides that "they shall have power to construct or authorize the construction of such works without their limits." Section 641 provides that when the right to build and operate such works is granted to private individuals or incorporated companies, "such cities or towns are authorized and empowered to enter into a contract with the individual or company constructing said works, to supply said city or town with water for fire purposes, and for such other purposes as may be necessary for the health and safety thereof, and to pay therefor such sum or sums as may be agreed upon between said contracting parties."

Section 643, after providing that cities and towns constructing such works are authorized to assess and collect water rents from consumers, and to levy a special tax on the taxable property of the city or town, which, with the water rents, shall be sufficient to pay the expenses of running and operating the works, provides as follows: "All cities and incorporated towns constructing such works are authorized to assess, from time to time, in such manner as they shall deem equitable, upon each tenement or other place supplied with water, such water rents as may be agreed upon; and at the regular time of levying taxes each year, said city or town is hereby empowered to levy and cause to be collected, in addition to the taxes now authorized to be levied, a special tax on taxable property in said city or town, which tax, with the water rents hereby authorized, shall be sufficient to pay the expenses of running and operating such works, and if the right to build, maintain, and operate such works is granted to private individuals or incorporated companies by such cities or towns, and said cities or towns shall contract with said individuals or companies for a supply of water for any purpose, such city or town shall levy each year, and cause to be collected, a special tax as provided for, above sufficient to pay off such water rents so agreed to be paid to said individual or company constructing said works; provided, however, that said tax shall not exceed the sum of five mills on the dollar for any one year, nor shall the same be levied upon the taxable property of said city or town which lies wholly without the limits of the benefit or protection of such works, which limit shall be fixed by the city council or board of trustees each year before making said levy." It will be observed, that when the city or town operates its own waterworks, the expense of running and operating such works is paid by the

rentals collected from the private consumers, and a special tax levied upon the taxable property in the city or town. It will also be observed, that when the right to construct and operate the works is given to individuals, or an incorporated company, power is given to the city or town to contract for a supply for the city or town, not to the extent that a special five-mill levy will pay, but to such extent "as may be necessary for the health and safety thereof." The authority is not to pay therefor the sum that may be realized from a five-mill levy, but "such sum or sums as may be agreed upon between said contracting parties." Three limitations are placed upon the power to levy this special tax, namely, the property upon which it may be levied, the amount of the levy,—five mills,—and that it shall be sufficient to pay off the water rent so agreed to be paid. Taking all the provisions of the statute to which we have referred, together, the meaning is plainly this: That where the city or town operates its own works, the expenses are paid out of the rentals from consumers and a tax upon the taxable property in the city or town. When the right to operate the works is given to another, the city or town may contract for a supply for public uses at such price as may be agreed upon. That the price agreed upon is to be paid out of the proceeds of a special tax upon the taxable property within the limits of benefit or protection, not to exceed five mills. If a levy of less than five mills yields sufficient revenue to pay the price agreed upon, then the levy must be in that amount; but, if the full amount of five mills is necessary, then it must be in that amount, and, if the revenue thus derived is insufficient, the city or town may contract to and pay the deficiency out of its general revenues. The limitations in section 643 are not upon the power to contract for a supply of water for public uses, but upon

the power to levy this special tax in aid of the payment therefor. When, within the limit of the five-mill tax, the supply can be thus paid for, it must be so paid; but when that source is not sufficient, the deficiency may be paid from the general revenues. A number of cases are cited, but we do not find that the question under consideration was passed upon in any of them. Appellee's counsel cite *Grant v. City of Davenport*, 36 Iowa, 396, and *City of Council Bluffs v. Stewart*, 51 Iowa, 385 (1 N. W. Rep. 628). Appellant's counsel cite *Water Co. v. Woodward*, 49 Iowa, 59; *Dodge v. City of Council Bluffs*, 57 Iowa, 567 (10 N. W. Rep. 886), and *Hanson v. Hunter*, 86 Iowa, 722 (48 N. W. Rep. 1005, and 53 N. W. Rep. 84). In none of these cases is the question considered as to the right of a city to contract and pay for a water supply for public uses, out of its general revenues, any deficiency that may remain after applying the proceeds of the special five-mill levy authorized. *City of Des Moines v. Des Moines Water Works Co.*, 95 Iowa, 348 (64 N. W. Rep. 269), is also referred to, and stress laid upon the following remark near the close of the opinion: "Counsel for the city make the proposition that any rate contracted for in excess of the five-mill levy of tax authorized by the statute is void. We do not think that question can be allowed to enter into the controversy. It has no merit, and is mentioned here only for the purpose of the future guidance of the parties in fixing rates." Surely, this did not decide the proposition made by counsel, and an examination of the opinion will show that the question was not involved, and was of no merit in that case. Looking to the statutes referred to, we have no doubt as to the power of the defendant city to contract as it did, nor of its right and liability to pay any deficiency that may remain after applying the proceeds of the five-mill

levy, out of its general revenues in satisfaction of the agreed price for water for public uses.

IV.   We have seen, that said section 643 provides, that the special tax authorized therein, shall not be levied upon the taxable property which lies without the limits of the benefit or protection of such works, "which limit shall be fixed by the city council or board of trustees, each year, before making said levy." Said ordinance, after providing that all the portion of the city which lies within, or by the extension of mains, may be brought within the limits of benefit or protection, shall constitute the water district, provides as follows:   "All territory or property within the distance of two thousand (2,000) feet of any fire hydrant shall be deemed to be within the limits of the benefits or protection of said water-works.   The limits of said water district shall be fixed and defined by the city council by resolution, on or before the first day of August, 1891, and annually thereafter, and shall not be lessened or diminished so long as the grantee supplies the same with water and water privileges, as provided in this ordinance.   Said water district shall, annually, as aforesaid, be enlarged by the city council on or before the annual tax levy is made, to correspond with any extension of the pipes or mains that may be made by the grantee in accordance with the provisions of this ordinance."   Appellant contends that the limits of the taxing district are arbitrarily and illegally fixed in the ordinance, and therefore the ordinance is void.   The ordinance, in harmony with the statute, makes it the duty of the city council to fix the limit each year, and it appears that the council has performed that duty.   This contention is based upon the thought that the provision as to two thousand feet fixes the limits irrevocably, but not so, we think.   The ordinance was passed June 1, 1891, and provides that

the limits shall be fixed on or before August 1, 1891, and annually thereafter, thus precluding the thought that the limits were irrevocably fixed. It provides for extending the limits as pipes or mains are extended, and, inferentially at least, for contracting the limits as benefit or protection is contracted. The ordinance, in effect, requires the plaintiff to furnish benefit and protection to property within the two thousand feet, and, so long as it does, the city council may not fix the limits at a less distance, and, if benefit and protection are furnished to a greater distance, the council may fix the limits accordingly. The provision as to two thousand feet fixes the standard by which benefit and protection are to be furnished and the limits fixed, and does not fix the limits. Thus construed, the ordinance is in harmony with the statute.

V. Appellant's next contention is that the contract is void, in that it attempts to exclude future regulation. Section 1, chapter 16, Acts Twenty-second General Assembly, confers upon cities power to regulate water rates, and to regulate and fix the charges for water meters, etc., and provides: "This shall not be construed to authorize the passage of an ordinance or resolution on the making of any contract whereby the above powers are abridged." The ordinance grants to appellee the right to charge and collect, during the continuance of the privilege, from consumers, the rates specified, "or other rates that may be established by the grantee and approved by said council." By this ordinance the city council established the rates therein specified, and have not since established any other or different rates. It is not alleged nor shown that these rates are unreasonable, and they are, therefore, authorized, legal, and binding until other reasonable rates are fixed. That the city council may at any time, when these rates are found to be unreasonable, fix rates that

are reasonable, we think cannot, in view of said chapter 16, well be doubted. It is insisted that because of the provision in the contract as to rates the contract should be declared void. The contract contemplates that a change may be made in the rates, and the law authorizes it. To sustain this contract is to permit the parties to go on under it, and enjoy just what each has contracted for, while to overthrow it would be to render practically valueless the large investment which appellee has made, and deprive appellant of just what it needs and has. Surely, every equitable consideration is against such result. What we have said disposes of appellant's contention that the rates, being for twenty-five years, are unreasonable.

VI. Appellant's remaining contention is that "this contract created an indebtedness beyond the constitutional limit, and is, therefore, void." We will not extend this opinion by discussing this claim further than to say that we doubt if it is shown that the liability is beyond the constitutional limit. Concede that it is, and we still think it is not an indebtedness within the meaning of the constitution, as shown by the Iowa cases mentioned elsewhere. Our conclusion is that the judgment rendered in favor of the plaintiff is correct, and it follows that the decree dismissing the petitions in equity is also correct.—AFFIRMED.