ROBINSON et al. v. BROOKS et al.

*(Circuit Court, W. D. Missouri, C. D. November 19, 1889.)*

SALE—DELIVERY—REASONABLE TIME.

Plaintiffs received from defendants an order to ship them a machine, to be used in threshing, "at once, or as soon as possible," for which defendants were to pay upon its arrival, and were notified that the threshing season had already begun. The machine at that time was at a point but 28 miles from its destination, a letter from plaintiffs to the railroad agent at that point should have reached him in two days, and there was a daily freight train between the two points. One week after they received the order, plaintiffs were notified that the machine had not reached defendants, and that the season was nearly over. The order from plaintiffs to the railroad agent at the place where the machine was, to ship it to defendants, reached him the next day, but defendants did not receive the machine until four days after that. *Held*, that plaintiffs failed to comply with their contract in regard to the time of shipment, their delay being unreasonable.

At Law.

*Cosgrove & Johnson*, for plaintiff.

*Draffin & Williams*, for defendants.

PHILIPS, J. This is an action to recover the purchase price of a threshing-machine. The facts are substantially as follows: The plaintiffs are manufacturers at Richmond, Ind., under the firm name of Robinson & Co., of traction-engines with designated equipments for threshing out grain. In June, 1886, the defendant John Mackler was the local agent of plaintiffs in and about Cooper county, Mo., for the sale of said machines. In the forepart of that month he obtained from one D. P. Weathers an order on plaintiffs for the machine in controversy. The machine was shipped about the 21st of that month from Richmond, Ind., to said Weathers, but the plaintiffs were named as consignees. On the 28th day of June, Mackler wrote plaintiffs from Pilot Grove, Cooper county, Mo., informing them that Weathers had failed to comply with his contract and take the machine, and proposed to store it for plaintiffs if they would advance the freight charges thereon, which the vendee by his contract was to pay. It does not appear from the evidence whether the machine was then at Sedalia; for Mackler himself, as appears from his letter, did not know where it was. Mackler also suggested in this letter of the 28th of June that he thought within ten days he could find another buyer for the machine. On receipt of this letter, plaintiffs notified Mackler that they expected Weathers to comply with his contract, and take the machine. On the 30th day of June, Mackler wrote plaintiffs that he had happily solved the difficulty by finding another purchaser

of this machine, and inclosed an order therefor. This order was signed by the defendants, Joseph D. Brooks, M. J. Judd, and John Mackler. Mackler stated that he had taken one-third interest, and the other defendants two-thirds. This order was drawn ⟨ ⟩ by Mackler on one of the printed blank forms furnished him as such agent by plaintiffs. It ran as follows: "We hereby order from you the following, [then follows a minute description of a ten-horse-power traction-engine, etc.,] to be second-hand, in good order, and to fill the bill, same as new as to working quality; * * * to be delivered on board cars at your factory, for shipment by the route you think best and cheapest, at once, or soon as possible, on or about July 1st, 1886, to be in care of John Mackler, at Pilot Grove, or as soon thereafter as possible,"—for which defendants were to pay, on arrival, $1,235, and the freight. The letter of Mackler accompanying this order stated that the machine ordered was the one shipped to Weathers at Sedalia; and the letter contained this concluding clause: "If it [the machine] is laid off on the road, hunt it up at once, as we are ready to thresh now." This letter reached plaintiffs on the 2d day of July; whereat they left order with the railroad agent at Richmond, through whom they shipped the machine, to have it forwarded at once to Mackler, at Pilot Grove, Mo. On the same day they telegraphed Mackler what they had done, and also wrote him that they had telegraphed to Sedalia to have machine forwarded, and expressing the hope that it would reach him in good condition. "If not, notify us, and it will be made so." Plaintiffs supposed that the machine had been forwarded as telegraphed until the 9th day of July, when they received letter from Mackler, dated July 7th, informing them that the machine had not reached Pilot Grove on the 6th inst., and that the other parties, Brooks and Judd, would refuse to take it because it was too late, and asking what he should do, etc. On receipt of this letter, plaintiffs immediately telegraphed Mackler that defendants must comply with the contract, and take the machine. They telegraphed to the agent at Sedalia and St. Louis of the railroad having the machine in charge to have it forwarded at once to Pilot Grove. The machine did not reach Pilot Grove, distant from Sedalia about 28 miles, until the 14th of the month. Defendants declined to receive the machine, and it was afterwards sold by the railroad company for the freight. This action is to recover the purchase money or the contract price. The defendants make two defenses: *First*, that the delay in shipping the machine was unreasonable; and, *second*, that the machine, as it reached Pilot Grove, was incomplete, in that the smoke-stack of the engine was missing, etc., without which the machine could not be operated.

1. The important matter presented on the foregoing facts is, was the delay in forwarding the machine from Sedalia to Pilot Grove such as to discharge defendants from the obligation to accept it when it did arrive? This turns upon the construction or effect to be given to the terms of the contract, "at once, or as soon as possible." These words, in the administration of justice, cannot have an arbitrary, stereotyped definition. They must possess so much flexibility as to be read and applied in the

light of the surrounding circumstances. In *Palmer* v. *Insurance Co.*, 44 Wis. 208, the court, in speaking of the term, "as soon as possible," as employed in a policy of insurance, say it "must mean that the particular account of the loss should be made as soon as it could be, under the circumstances, or within a reasonable time, or as soon as practicable." 2 Benj. Sales, §§ 1027, 1028, refers to *Attwood* v. *Emery*, 1 C. B. (N. S.) 110, where the agreement of the vendor, a manufacturer, to deliver as soon as possible, was construed to mean. "as soon as the vendors could, with reference to their ability to furnish the article ordered, consistent with the execution of prior orders in hand." Reference then is made to the later case of *Engineering Co.* v. *McHaffie*, L. R. 4 Q. B. Div. 670, as expressive of the better rule, where it is held that these words "mean within a reasonable time, with an undertaking to do it in the shortest practicable time. * * * By the words as soon as possible," said COTTON, L. J., "the defendant must be taken to have meant that they would make the gun as quickly as it could be made in the largest establishment, with the best appliances." The delay in that case arose from the act of an incompetent workman, and the vendor was held for breach of contract. When the order in question was forwarded to plaintiffs, on the 30th day of June, the machine, presumably, was already on car at the station at Sedalia, Mo., within 28 miles of Pilot Grove. Plaintiffs were advised of the importance to the purchasers of the greatest expedition in forwarding it. They must have known, as manufacturers engaged in the business of selling such machines for the harvest in Missouri, that the season for threshing begins here about the last days of June, or the first of July; in addition to which, the letter of June 30th, accompanying the order for the machine, urged immediate attention, as the threshing was ready. Knowing, as plaintiffs did, that such machines were bought for use in the beginning and flush of the threshing season, this fact indicated to them that time was of the very essence of the contract, and that the terms "at once, or as soon as possible," meant at the earliest moment of time practicable to meet the purchasers' object in making the order. Plaintiffs received this order on the 2d day of July. A letter from them to the railroad agent at Sedalia would, in the ordinary course of mail, have reached him on the 4th of July. There was a daily freight train between Sedalia and Pilot Grove. The machine could have left Sedalia on the 5th of July, or by the 6th, on a liberal allowance, and reached Pilot Grove in a few hours. It is to be conceded to the plaintiffs that on the receipt of the order they recognized the importance of activity, for they left an order with the shipping agent at Richmond, Ind., over whose line they made the original shipment, to order by telegraph the car to be forwarded from Sedalia And they claim that they also notified one of the defendants of this fact by telegram. But it does not appear that either of these telegrams were received. This being an action to recover the contract price, it devolves on plaintiffs to show that they performed essentially on their part. Did the plaintiffs discharge their whole duty, under the contract, by simply giving a memorandum order to the local railroad agent in Indiana, and returning to their place of business, and not making any

inquiry for seven days, to ascertain whether or not the order had been executed? They did not perform their undertaking to ship this car by merely leaving directions with an agent in Indiana to attend to it. The neglect of the railroad agent was their neglect, so far as these defendants are concerned. The plaintiffs might have their remedy against the railroad company, but their contract required that they should deliver the machine on board the cars, or, as applied to the facts of this case, that they should reship from Sedalia to Pilot Grove, to Mackler, as consignee. This undertaking on their part they had not executed on the 9th day of July, when they learned through Mackler that the machine had not reached Pilot Grove on the 7th. They then bestirred themselves by telegram, and not until the 10th of July did the reshipping order reach the agent at Sedalia; and the car did not reach Pilot Grove until the 14th day of July. No reason is assigned, nor a word of evidence offered, by plaintiffs to account for the delay of four days more after the shipping order reached Sedalia before the car was sent to Pilot Grove. It is true that under the contract the machine would, technically, be regarded as delivered to defendants when shipped from Sedalia. But plaintiffs fail to show the date of shipment; and, as the car did not reach Pilot Grove until the 14th of July, a distance of only 28 miles, and the evidence shows that there is a freight train each morning from Sedalia to Pilot Grove, the presumption is that the car was not reshipped from Sedalia until the morning of the 14th. Here, then, was a period of over 2 weeks after the order was given, and 12 days after plaintiffs received it, before it was executed; when, as already demonstrated, 5 or 6 days afforded every reasonable facility and time for its execution. As shown by the evidence, and as must have been known to plaintiffs,—for as much was indicated to them by defendant Mackler's letter of the 7th July,—when this machine left Sedalia the season for threshing grain was two-thirds over, and the main inducement to the purchase was passed. This was not, in the language of the authorities, "within a reasonable time, with an undertaking to do it in the shortest practicable time."

The great mistake which has led to this litigation was the thoughtless security with which plaintiffs sat down after leaving an order with the local railroad agent at Richmond, on July 2d. They trusted him to do that which they should have seen was done. His neglect, his delay, cannot be attributed to these defendants, nor exonerate the plaintiffs. Plaintiffs, in fact, seem to have acted with little business sense, conservatism, or prudence, throughout. After being advised, as they were, by Mackler that the machine would not be accepted if shipped after that date, they had two courses open to them,—to have stopped there, and sued defendants for damages consequent upon their refusal to accept, or, after shipping to Pilot Grove, and finding no one to receive the machine, they should have housed it, and sold it for the best price attainable, and sued for the difference in damages. They would neither advise the defendants to house it, without prejudice, nor reship to Sedalia, but abandoned the machine to its fate, to be sacrificed by the railroad for freightage. The exercise of a little common sense, and a spirit of compromise,

to a reasonable extent, often pay better in the end than a swift and ready resort to litigation. In the view thus taken of this case, it is unnecessary to discuss the other fact in evidence, and relied on by defendants, that the machine, when it did reach Pilot Grove, was without a smoke-stack, without which it could not be operated. The first defense is conclusive enough. It follows that the issues are found for the defendants. Judgment accordingly.