## FREDERICK LUNDAHL

*v.*

## W. T. HANSEN.

*Filed at Ottawa October 26, 1893.*

1. CONTRACT—*right of rescission—when it exists.* Where one party has absolutely refused to perform, or has incapacitated himself from performing, his part of the contract, the other party may rescind it, and sue for what he has already done under it. But the mere fact that one of the parties may have understood his rights under the contract to be different from what they in fact were, and have attempted to declare a forfeiture of it when he had no right to do so, will not necessarily entitle the other party to treat the contract as rescinded. It might be, if the rights of the other party were injuriously affected thereby, that a court of equity would allow him to treat it as rescinded.

2. SAME—*rescission—recovery of purchase money paid.* Where the purchaser of land is entitled to treat the contract as rescinded, and to recover the purchase money paid by him, his remedy is by an action at law, and a court of equity will not have jurisdiction of a bill seeking such recovery.

3. CHANCERY—*bill to set aside contract of sale—its sufficiency.* An allegation in a bill for the cancellation of a contract for the sale of land, that, on information and belief, the vendor had no legal title to the premises sold, at or since the making of the contract, and was not, therefore, in a position to carry out the contract on his part, is wholly insufficient to justify a decree rescinding the contract for fraud.

APPEAL from the Superior Court of Cook county; the Hon. FRANCIS M. WRIGHT, Judge, presiding.

This cause originated in the Superior Court of Cook county, by bill in chancery, by appellant, against appellee, to cancel a contract between the parties, and compel the repayment of money alleged to have been paid under it. A general demurrer to the bill was overruled, and the cause heard on the bill, answer, replication and proofs, and a decree rendered dismissing the bill for want of equity, at the complainant's cost. That decree was affirmed by the Appellate Court, and hence this appeal.

The bill set up the following agreement in writing:

"This agreement, made this 15th day of July, 1889, between W. T. Hansen, (formerly of Frederikson, Hansen & Drummond,) of Chicago, Ill., of the first part, and Fred. Lundahl, of Englewood, Ill., of the second part:

"*Witnesseth,* that in consideration of the stipulations herein contained and the payments to be made, as hereinafter specified, the first party hereby agrees to sell unto the second party the north-west quarter of section No. thirty-one (31), in township No. one hundred and seven (107), north, of range No. forty-two (42), west of the fifth P. M., being in Murray county, State of Minnesota, containing, according to the United States survey, one hundred and sixty and 00-100 acres, be the same more or less, at eighteen hundred and forty 00-100 dollars, on which the said second party hath paid the sum of fourteen hundred and sixty-three and 00-100 dollars, being principal; and the said second party, in consideration of the premises, hereby agrees to pay the said party of the first part the fol-

lowing sums, in principal and interest, at their several times named below:

| | Date. | Principal. | Interest. | Total. |
|---|---|---|---|---|
| 1st payment, July 15, 1890 | | $125.67 | $26.38 | $152.05 |
| 2d " " " 1891 | | .125.67 | 17.58 | 143.25 |
| 3d " " " 1892 | | 125.67 | 8.79 | 134.45 |

"And when the above named payments are made by the second party, for which sums he has given his promissory notes, bearing even date herewith, payable on the date named above, at the office of W. T. Hansen, in Chicago, Illinois, the said party of the first part will then make unto the said second party a warranty deed on the above described land, and the said second party hereto agrees and binds himself, his heirs and assigns. It is also agreed that the said second party may demand deed at any time before the expiration of the above specified period, upon payment, in full, of principal remaining unpaid, with interest accrued thereon, it being mutually understood, the said second party, or his heirs or assigns, will regularly and seasonably pay all such taxes and assessments as may be lawfully imposed upon said premises after date of this agreement. It is also agreed, that should the party of the second part fail to make any of the payments named above, and at the time stipulated, the payments already made shall be forfeited to the said party of the first part, and this contract shall be null and void.

"In witness of which, the said parties hereto have caused these presents, in duplicate, to be executed on the day and year first above written.

W. T. HANSEN, *Grantor.*

FREDERICK LUNDAHL, *Purchaser.*"

The bill alleged the payment of the $1463 named in the contract, and also the first payment of $152.05, due July 15, 1890. It then states that in April or May, 1891, complainant stated to the defendant that he might not be able to meet the approaching payment due in July, and that the defendant

thereupon promised him to extend the time of that payment, and told him that he need not make it at the time stated in the contract; that about the 15th of July of that year he received a notice from an agent of defendant, requesting him to call and make the said payment; that he at once informed the agent of his understanding with the defendant, but was informed that the latter was then in Europe, and the payment would have to be made according to the terms of the contract; that on the 22d of that month he tendered to the agent the full amount of the payment, which he refused to receive, stating that he had declared the contract forfeited. It further alleged that the complainant had been willing, at all times, to comply with the said agreement on his part, and that he offered to pay the defendant the balance due under the same if he would deliver to him a sufficient warranty deed for the premises, according to the terms of the agreement, but he refused, and declared the contract forfeited; also, that *"he is informed and believes"* that the defendant, at the time of making the contract, had no legal title to the premises, and that he had no title to the same at any time since, and was therefore not in a position, at that or any time since, to carry out the contract by making a deed, which was a fraud upon the complainant. On these allegations it was prayed that the agreement be canceled, and a decree entered requiring the defendant to pay complainant the moneys paid by him in compliance with the terms of the agreement, amounting to the sum of $1615.05, with interest since the dates of the payment thereof. There was also a general prayer for relief.

The defendant by his answer admitted the making of the contract, and alleged that at the time of making the same he had only a contract with the then owners for a deed to the same, and so informed the complainant; denied that he received the sum of $1463 in money, and alleged that that sum was treated by the parties as the value of certain other real estate which the defendant in fact received from the com-

plainant in exchange for the lands described in the agree-- ment; denied that he consented to an extension of the time of payment of the amount due under the contract, July 15, 1891; denied that the complainant was at all times ready and willing to comply with the terms of the agreement on his. part, or that he offered to pay the balance due under the same if defendant would make him a good and sufficient warranty deed for the said premises, or that the defendant refused to comply with the contract on his part; admitted the offer to pay his agent the sum of $142.25 on the 22d of July, 1891, and that the agent refused to accept the same, but averred that the complainant was then in default, also, in the payment of taxes due on said land; averred that several days before the filing of complainant's bill he notified him that he, the defendant, was ready and willing to go on with the contract, but he refused to accept the offer; denied that he has not, since the making of the contract, had the title to the land described in the same, but says that on November 2, 1891, he obtained, under his said contract, a good and sufficient warranty deed therefor, and has had the same duly recorded.

Messrs. Thompson & Madden, for the appellant:

The court of equity has jurisdiction of this class of cases, and will grant relief. If Hansen wrongfully forfeited the contract when Lundahl was not in default, it was a breach of the contract, and Lundahl could treat the contract as rescinded, and proceed against Hansen, in equity, for a cancellation of the contract, and delivery up of the notes executed and delivered to Hansen in pursuance thereof, and a repayment of the money paid by Lundahl under the contract. 1 Pomeroy's Eq. sec. 110; 3 id. sec. 1377, note 5; Bispham's Eq. secs. 473, 478; *Oliver* v. *Croswell,* 42 Ill. 41; *People* v. *Chicago,* 53 id. 428; *Field* v. *Herrick,* 5 Ill. App. 58; *Hamilton* v. *Cummings,* 1 Johns. Ch. 517; *Wade* v. *Bunn,* 84 Ill. 120; *Wheeler* v. *Mather,* 56 id. 241.

The forfeiture of the contract by Hansen on July 15, 1891, was a breach of the contract for two reasons : First, the note did not become due until July 18, 1891 ; and second, it was contrary to his promise to extend the time of payment, and was, therefore, in either case, a breach of the contract, which Lundahl could treat as a rescission. 1 Daniel on Neg. Inst. sec. 617 ; 2 id. sec. 1210 ; Rev. Stat. chap. 98, sec. 15 ; *Bryson* v. *Crawford*, 68 Ill. 365 ; *Shaffner* v. *Killian*, 7 Ill. App. 623 ; *Davidson* v. *Hill*, 1 id. 70 ; *Smith* v. *Lamb*, 26 Ill. 397 ; *Longfellow* v. *Moore*, 102 id. 289 ; *Eames* v. *Turnverein*, 8 Ill. App. 664.

Hansen had no title to the Minnesota land at the time he forfeited the contract, and did not receive the deed to the property until after the institution of this suit. A vendor who is not in a condition to convey, can not declare a forfeiture. *Baker* v. *Bishop Hill Colony*, 45 Ill. 264 ; *Boston* v. *Nichols*, 47 id. 353 ; *Mix* v. *Beach*, 46 id. 311 ; *Smith* v. *Lamb*, 26 id. 399.

Lundahl was not in default in the matter of the payment of taxes, and the question can not be urged here, for the reason that no demand was made for the taxes, and the contract was not forfeited for non-payment of taxes. Minnesota Stat. 1878, chap. 11, secs. 6, 41 ; *Smith* v. *Lamb*, 26 Ill. 399 ; *Oliver* v. *Croswell*, 42 id. 44.

Hansen having declared the contract forfeited, could not revoke that forfeiture and re-instate the contract without Lundahl's consent. In short, the attempted forfeiture was a breach of and put an end to the contract, and placed Lundahl in a position immediately to treat the contract as rescinded, and proceed to recover the money he had paid thereunder. *Schoonover* v. *Christy*, 20 Ill. 426 ; *Jacquin* v. *Warren*, 40 id. 459 ; *Kaufman* v. *Cook*, 114 id. 11 ; *Bowman* v. *Cunningham*, 78 id. 48.

Hansen must place Lundahl *in statu quo*. Having sold and transferred the Englewood property received from Lundahl in

part payment on the Minnesota land, Hansen must repay to Lundahl the consideration of the Englewood property mentioned in the contract. Usually, before a party can rescind a contract he must restore, or offer to restore, what he has received on the contract, and place the opposite party in the same position as he was at the time the agreement was entered into by the parties. *Gehr* v. *Hagerman,* 26 Ill. 438; *Wheeler* v. *Mather,* 56 id. 241; *Buchenau* v. *Horney,* 12 id. 338.

Messrs. HOFHEIMER & ZEISLER, for the appellee:

There is a complete remedy at law. *Smith* v. *Lamb,* 26 Ill. 396; *Hurd* v. *Denny,* 16 id. 492; *Eames* v. *Turnverein,* 8 Bradw. 663; *Bryson* v. *Crawford,* 68 Ill. 365.

The prayer for cancellation is meaningless and unavailable. 1 Pomeroy's Eq. Jur. secs. 110, 1377, note 5; *Town of Venice* v. *Woodruff,* 67 N. Y. 462.

No case for relief was made by the evidence.

As to the right to rescind the contract, see *Dusel* v. *Jordan,* 104 Mass. 407; *Monsen* v. *Stevens,* 56 Ill. 335; Chitty on Contracts, (10th Am. ed.) 336.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

The bill is certainly very loosely drawn, and a decree upon it without amendment, even if authorized by the evidence, could not have been sustained. It is also true, as contended by counsel for appellee, that the only substantial relief sought by the bill is the repayment of money paid under the contract, and for that relief, if complainant is entitled to treat the agreement as rescinded, there is a complete and adequate remedy at law. But in our view of the case the decree of the Superior Court was fully authorized upon the broader ground that under the issues and the proofs no sufficient cause for the rescission of the contract was shown.

The grounds attempted to be set up in the bill for the cancellation of the contract, considered in the inverse order in

which they are stated, are, that, *on information and belief,* the defendant had no legal title to the premises sold, at or since the making of the contract, and was not therefore in a position to carry out the contract on his part. This is an attempt to set up fraud on the part of the vendor, but the allegation is so manifestly insufficient that no one could seriously contend that a decree could be supported by it. Neither is it pretended by the complainant, in his testimony, that he was in any way misled or deceived by the defendant as to the true condition of the title at the time of the sale, or afterwards. Under the evidence in the record the contract could have been specifically enforced by either party, the defendant having obtained the title at the time when, by the terms of the contract, he was bound to convey. (*Monsen* v. *Stevens,* 56 Ill. 335.) The allegation that the defendant refused to make and deliver to complainant a good and sufficient deed upon his offer to pay the balance due upon the contract, is wholly unsupported by proof.

If, then, the bill can be maintained at all, it must be upon the ground that the defendant is shown to have wrongfully attempted to declare a forfeiture of the contract, and refused to go on and carry out the same as agreed upon. This seems to be conceded in the argument, and counsel state the ground of the right to the relief prayed, as follows: "If Hansen wrongfully forfeited the contract when Lundahl was not in default, it was a breach of the contract, and Lundahl could treat the contract as rescinded, and proceed against Hansen, in equity, for a cancellation of the contract and delivery up of the notes executed and delivered to Hansen in pursuance thereof, and a repayment of the money paid by Lundahl under the contract." Numerous authorities are cited as supporting this proposition, but we are unable to see how a single one of them can be construed into even a recognition of the doctrine therein announced. The attempt evidently is to bring the case within the rule, that "when one party has absolutely re-

fused to perform, or has incapacitated himself from performing, his side of the contract, the other party may rescind the contract and sue for what he has already done under it." The reason of this rule is, that the party absolutely refusing to go on with the agreement is presumed to consent to a rescission, and, the other party electing to so treat it, there is, in effect, a rescission by consent. The mere fact that one of the parties may have understood his rights under the contract to be different from what they in fact were, and attempted to declare a forfeiture of it when he had no legal right to do so, would not, as we understand the law, necessarily entitle the other party to treat the contract as rescinded. So far from the declaration of forfeiture indicating a consent to rescission, it is an express effort to exercise a right under its provisions. It might be, if the rights of the other party were injuriously affected thereby, that a court of equity would allow him to treat it as rescinded; but the proposition here is, that the wrongful declaration of forfeiture gives the right of rescission, without reference to any question as to how the rights of the other party are affected. In this case there is not the slightest evidence of an injury resulting to appellant by the attempted forfeiture, or refusal to accept the payment due July, 1891. It is also clear, from the testimony even of appellant himself, that he did not treat the contract as at an end upon the attempted forfeiture, but refused to do so. Both his testimony and that of the appellee shows, that while the latter, speaking of the action of his agent in giving notice of the forfeiture, said he could not go back on what the agent had done, he, at the same time, negotiated with appellant for a settlement of the matters between them, and offered him a certain sum of money. Appellee swears positively that appellant took the matter under advisement, being undecided whether he would accept it or not. The most that appellant says on that subject is, that he does not remember whether he said anything about accepting or refusing the offer.

It is clear, from all the proof, that appellee was not, at the time this bill was filed, insisting upon an absolute forfeiture of the contract, and that appellant knew it. It is not denied that before the bill was filed appellee mailed a letter to appellant, which he should have received in due course of mail before the bill was filed, in which he expressly told him that he withdrew the notice of forfeiture, and was ready and willing to go on and fulfill the contract on his part. It is true, appellant testified that he did not get the letter until after his bill was filed; but even if he did not, we fail to see that he was in a position, after receiving it, to ask a court of equity to allow him to treat the contract as rescinded because of the breach of the other party, there being no evidence of injury done him. It might have furnished a sufficient reason for asking the court to require appellee to pay the costs, but certainly no more. The weakness of appellant's case lies in the fact that he seeks to rescind and cancel a contract, fairly entered into, because of an attempt by the other contracting party to do a thing which he had no right to do, but which was wholly harmless to him. If he had elected to treat the declaration of forfeiture as an abandonment of the contract on the part of appellee, and proceeded to recover back what he had paid under it, he might have insisted, with some plausibility, that there was a rescission. But even that he did not see proper to do.

We are clearly of the opinion that no sufficient cause was shown in the court below for asking the interposition of a court of equity to cancel the agreement between these parties. Appellant's proper remedy was a bill for specific performance, or an action at law on the contract for its breach. He may still have one of those remedies, but the decree of the Superior Court will be affirmed.

*Decree affirmed.*