KAUKAUNA ELECTRIC LIGHT COMPANY, Appellant, vs. CITY OF KAUKAUNA, Respondent.

*February 1—May 13, 1902.*

*Municipal corporations: Ordinance granting franchise: Contract for street lighting: Recovery of compensation: Defenses: Breach of duties pertaining only to franchise: Rescission: Specific performance: Counterclaim: Judgment.*

1. Where a municipal ordinance grants to an electric light company a franchise to use the streets upon certain conditions and also contains a contract with the company for street lighting, breaches of the conditions which are germane only to the franchise—such as those which relate to the burying of wires or the painting of poles—constitute no defense to an action to enforce payment for lights furnished under the contract.
2. A provision in such an ordinance that the company shall give and, whenever requested, renew a bond to indemnify and save harmless the city from all damages arising out of the exercise of the privileges granted, and for faithful compliance with all the provisions of the ordinance, is germane both to the fran-

chise and to the contract; but where the city has demanded a new bond merely to indemnify it for "all loss or damage by reason of the privileges granted them under the franchise," failure to comply with such demand does not put the company in default with respect to the contract or constitute a defense to an action thereon for lights furnished.

3. An agreement, contained in such ordinance, that the company will furnish to the city, for street lighting, electric lights of specified power at a certain price per light, is an agreement to furnish all such lights as the city may, in reason, deem necessary and demand.

4. Such agreement is an essential consideration or condition upon which the city's promise to pay for street lighting is based, and the injury to the city from a breach thereof cannot be measured in damages. Performance by the company is, therefore, a condition precedent to its right to recover for lights actually furnished, unless the city has so acted as to justify an assumption of acceptance, consent, or waiver.

5. Where, after demanding that additional lights be furnished under such agreement, the city waited a reasonable time (some three months) until the company's purpose not to furnish them became clear, paid for lights actually furnished meanwhile, then notified the company that it would no longer accept or pay for lights furnished by it, and thereafter did not accept or voluntarily receive further service from the company, the latter was not entitled to recover for street lights which continued to burn without any power on the part of the city to prevent it.

[6. Whether for such a breach of the lighting contract the city might, by declaration and notice of rescission, effectually terminate the contract, not determined.]

7. Where by reason of nonperformance of the lighting contract the company is not entitled to recover for lights furnished, it cannot complain of a judgment allowing it to recover the sum sued for, without interest and without costs, upon condition that it comply with provisions of the ordinance relative to burying its wires and giving a new bond.

8. But the city could not, in the action on the contract to recover for lights furnished, interpose a counterclaim for specific performance of provisions of the ordinance which are germane only to the franchise granted; and a judgment in such action, so far as it contains a mandatory decree requiring the company to comply with such provisions, is erroneous. [Whether the city could obtain such relief in an independent suit, not determined.]

9. In such an action to recover for lights furnished, the city offered, if the court concluded that the contract had not been effectively

terminated by declaration and notice of rescission, to continue it upon condition that all refusals to abide its terms be abandoned by the company, and also to pay such sum as it ought for lights which had been furnished. Plaintiff was not legally entitled to any recovery, but the judgment allowed it to recover the amount sued for, without interest and without costs, upon condition that within four months it comply with certain provisions of the ordinance in respect to burying its wires and giving bond of indemnity. The judgment also, erroneously, on defendant's counterclaim, granted a mandatory decree for such compliance. Defendant did not appeal. *Held*, that as to the money recovery the judgment should be sustained, and plaintiff be given four months after entry of a corrected judgment to perform the conditions imposed.

APPEAL from a judgment of the circuit court for Outagamie county: JOHN GOODLAND, Circuit Judge. *Reversed.*

Plaintiff operates an electric light plant at the city of *Kaukauna,* occupying the streets with its poles, under a franchise in the form of an ordinance of the city adopted September 5, 1889, which gives it a right to use the streets for the purpose of furnishing both arc and incandescent lights. By the second section the company contracts to furnish the city incandescent electric lights of certain sizes at certain prices; also to furnish certain lights for bridges, fire department, and council room free of charge. Other sections of the ordinance provide that the company shall give a $5,000 bond, conditioned "to indemnify and save harmless the city of *Kaukauna* of and from all damages which may in any way arise or grow out of the exercise by said grantee of the privileges herein granted," and further conditioned "for the faithful compliance by said grantee with all of the terms and provisions of the ordinance, and said bond shall be renewed at any time and as often as the common council of said city may require." It was also provided that after ten years from the passage of the ordinance, "if the city deems it necessary, the said grantee shall be required to lay its wires under ground, including those already put up, at the rate of not

less than two or more than four blocks per year until all wires are under ground." The acceptance of the ordinance was declared to constitute a contract binding with equal force upon both parties thereto. This ordinance was duly accepted and a bond filed.

On August 4, 1897, a supplemental contract was made, by which the company agreed to furnish, at a price specified, such arc lights as the city might demand, except that they should not be located more than 600 feet from existing lamps; such arc lamps to displace such incandescent lamps as the city should direct. Otherwise the former contract remained in full force with the later contract as a supplement.

On March 7, 1899, the city enacted an ordinance requiring certain painting of all poles in the city, expressly including those of this plaintiff, imposing a penalty or fine of $5 for every twenty-four hours of disobedience after thirty days" notice. That notice was given about August 1, 1899. On July 11, 1899, a resolution was adopted, and communicated to the plaintiff, requiring additional incandescent lamps to be located at five or six specified places. On August 1, 1899, a resolution was adopted, and communicated to the plaintiff, requiring the company to give a new bond, in the sum of five thousand dollars, "to indemnify the city from all loss or damage by reason of the privileges granted them under their franchise." On the same day a resolution was adopted to notify the company that the city would exercise its right under the franchise to require the company to bury four blocks (not designated) of their wires after the ten years should have expired, viz., September 5, 1899. On October 3, 1899, an ordinance was duly adopted, and notified to the plaintiff, reciting the provision of the franchise, and declaring the sense of the council that the burying of a portion of plaintiff's wires was necessary for the best interests and welfare of the city, and ordering the plaintiff to place under ground their wires on two specified blocks, and to commence

such work within thirty days after the passage of the resolution, and to prosecute it with due diligence until its completion.

The company made no attempt at compliance with any of the ordinances and resolutions of 1899 above recited, and on November 7th the council adopted a resolution reciting the failure to comply with said several ordinances and resolutions, and resolving that the city thereby declared said franchise and contract forfeited and broken; that it would no longer accept or pay for lights furnished by the company; and that the company be, and it thereby was, ordered to remove from the public streets all poles, wires, and other fixtures. The same day was appropriated $100 as payment in full to the company of all that was due it for light up to the date of that resolution, which money was tendered to it, and was brought into court and deposited at the time of answering. Plaintiff continued to run the pre-existing street lamps, but the city cut off all lamps within its control in the public buildings and on bridges, and neither received nor used any light or power from the plaintiff, after November 7th, voluntarily. Thereafter, at monthly intervals, the company presented its bills, which were not passed upon by the council, and within the time limited by the charter the company took appeals to the circuit court, until a large number of such appeals were pending, upon bills of about $260 a month, which were afterwards consolidated into this one suit, making a total of $4,222.08.

The defendant interposed as answer a denial of compliance by the company with its contract, alleging all of the breaches of ordinances and resolutions above recited. It counterclaimed the same breaches to its damage $5,000, and by a second counterclaim it set up the same breaches of duty; also that the city had no other means of lighting its streets, and could not practically supply another method; that the plaintiff was engaged in commercial lighting as well as street

lighting, and used its poles and wires for that purpose, whereby the city was continually subject to liability, for which it had no adequate indemnity in the form of a bond or otherwise; that the damage to the city from such breaches of contract by the plaintiff was great and irreparable, but difficult, if not impossible, of ascertainment; that a multiplicity of suits arose from the continued claim of the plaintiff to continue furnishing lights under the ordinance, alleging that, if the whole contract had not been effectively rescinded, the city was ready to comply on its part with all of its contract, provided the plaintiff should first perform the conditions of its franchise and contract; and prayed judgment dismissing the complaint, enjoining the commencement of any more suits or filing of any more claims before the council; also that the plaintiff be perpetually restrained from committing any breach of either of its two contracts; that it be compelled to place and maintain the additional lights demanded, and such others as might be demanded, by the defendant; and that by mandatory injunction it be compelled to bury its wires, as specified in the recited resolutions, and be compelled to furnish the defendant a bond in compliance with its contract; also that the same acts be enforced by decree of specific performance.

The court found the facts substantially as above, and on October 30, 1901, rendered judgment that the two contracts of September 5, 1889, and August 4, 1897, be specifically enforced, by requiring the plaintiff, within four months from the service of notice of entry of the judgment, to deposit with the city clerk a bond in the penal sum of $5,000, conditioned as required by the contract; that within like four months, adjudged to be a reasonable time, the plaintiff lay or place under ground its wires in the blocks specified in the ordinance; and that, upon affidavit filed with the clerk of court showing compliance therewith, judgment be entered in favor of the plaintiff and against the city for the contract

amount of the service sued for, $4,222.08; and further providing that, in case of failure to comply within four months with the mandatory portion of such judgment, the plaintiff take nothing by the action and its complaint be dismissed; judgment without costs to either party.    From that judgment the plaintiff appeals.

*Humphrey Pierce,* attorney, and *D. S. Rose* of counsel, for the appellant.

For the respondent there were briefs by *Lyman E. Barnes, G. H. Dawson, Joseph Chopin,* and *E. A. Baker,* and oral argument by *Mr. Barnes.*    As to the power of the court to decree specific performance of the lighting contract, whether it be considered as parcel of the franchise proper or as a distinct and independent contract, they cited *Burlington v. Burlington W. Co.* 86 Iowa, 266, 276, 279, 53 N. W. 246; *Joy v. St. Louis,* 138 U. S. 1, 42, 46, 47, 50; *Pennsylvania R. Co. v. St. L., A. & T. H. R. Co.* 118 U. S. 290, 305, 306; *Franklin T. Co. v. Harrison,* 145 U. S. 459, 474; Pom. Eq. Jur. sec. 11; *Union P. R. Co. v. C., R. I. & P. R. Co.* 163 U. S. 564, 600, 601; *Bald Eagle V. R. Co. v. Nittany V. R. Co.* 171 Pa. St. 284; *Conemaugh G. Co. v. Jackson F. G. Co.* 186 Pa. St. 443; *Standard Fashion Co. v. Siegel Cooper Co.* 157 N. Y. 60; *Prospect Park & C. I. R. Co. v. Coney I. & B. R. Co.* 144 N. Y. 152, 26 L. R. A. 610; *Schmidt v. Louisville & N. R. Co.* (Ky.) 38 L. R. A. 809; Pom. Eq. Jur. (2d ed.) secs. 1402, 1404.

The following opinion was filed March 11, 1902:

DODGE, J.    The ordinance or contract serving as the basis of the rights of the respective parties in this case is one of a character now become very common in this state, where the city acts in a twofold capacity. First, as a governmental body exercising delegated power of the state, it confers, and limits with conditions, the privilege or franchise to use the public streets, under authority of sec. 1780*b*, Stats. 1898.    *State ex*

*rel. Rose v. Superior Court,* 105 Wis. 651, 673, 81 N. W.
1046; *State ex rel. Att'y Gen. v. Portage City Water Co.*
107 Wis. 441, 445, 83 N. W. 697. It is true that no such
authority had been delegated when, in 1889, this ordinance
was enacted, and it was perhaps originally void. This want
of authority with reference to electric lighting companies
was, however, supplied by ch. 192, Laws of 1893, which
probably may be considered as ratifying the original ordi-
nance. In addition to this function as an agent of the state,
however, the city, in the same instrument or ordinance,
exercises its function as a business corporation, with power
to purchase, contract for, and pay for electric lights for
public purposes, and to specify the conditions of such con-
tracting,—a power arising under its own charter. In the
argument in this case, as in the ordinance itself, these two
functions are greatly confused, and it is not always easy to
separate those provisions which pertain to the one portion or
the other of the instrument. In the formulation of such a
document, reciprocal duties are usually imposed both upon
the grantee of the franchise and upon the city. Some of
these duties or conditions clearly relate exclusively to the
subject of the franchise. Others with equal clearness may
apply only to the contractual and commercial duty of sup-
plying lights to the city, to be paid for when so supplied.
Other provisions, conditions, and covenants may be of a
mixed character, possibly applicable to both phases, so that
their disobedience would at once constitute a breach of the
plaintiff's contractual duty, which forms the basis of the
city's promise to pay, and also a breach of the conditions
upon which it holds its franchise from the state to occupy
the public streets.

The plaintiff's action is predicated wholly upon the com-
mercial contract embodied in the original ordinance and in
the supplemental contract with reference to arc lights. The
city's defense thereto is breach by the plaintiff of several

of the obligations which it assumed. In dealing with this street-lighting contract, the parties stand purely and simply as contractors, governed by the same rules of law which govern private contractors, except so far as the known situation of each may control the interpretation of their mutual promises. The company is to do certain things as a consideration of the city's promise to pay, and, as in the case of any other contract, the city's duty to pay arises only on performance of such of the undertakings of the company as can be fairly said to constitute essential consideration therefor. This consideration makes it necessary to examine the various failures of duty on the part of the plaintiff alleged and found to have occurred, in order to ascertain whether any of them were fairly germane to the contractual aspect of the ordinance, and conditions precedent to the duty of the city to perform its part of that contract.

The obligations and conditions assumed by the company, and breached by it, which the answer sets up by way of defense, are four: first, that the company has failed and refused to place underground its wires when ordered so to do by the common council; second, that it has failed and refused to paint its poles in the manner required by a city ordinance; third, that it has failed and refused to give a new bond as demanded by the city; and, fourth, that it has failed and refused to instal incandescent street lamps when and where demanded by the council.

As to the first two of these,—the burying of the wires and the painting of the poles,—we deem it entirely clear that they have no relation to the mere commercial contract of purchase and sale of lights; that they pertain wholly to the gift and continuance of the franchise to use the streets, if, indeed, the painting of poles can be deemed a condition of the original ordinance at all. They do not in any wise affect the interests of the city as a buyer of public lighting. They may affect its municipal government and policy as to the

care and protection of the streets, but in that respect they are relevant only to the propriety of the continuance of the plaintiff's franchise to use the streets.   Hence we conclude that their performance or breach is in no wise material to the lighting contract; that, if any penalty results to the plaintiff therefrom, it is a forfeiture of its franchise, which can be enforced only at suit of the state.   *State ex rel. Att'y Gen. v. Madison St. R. Co.* 72 Wis. 612, 40 N. W. 487; *Wright v. Milwaukee E. R. & L. Co.* 95 Wis. 29, 36, 69 N. W. 791.   So long as the state allows that franchise to continue in existence, if the company duly performs its promise to furnish lights in the manner prescribed by the ordinance, it arouses the duty of the city to pay therefor according to its promise.

The agreement of the plaintiff to give and, whenever requested, to renew a bond conditioned to indemnify and save harmless the city from all damages which may in any way arise or grow out of the exercise by said grantee of the privileges granted, and for the faithful compliance by the company with all the terms and provisions of the ordinance, has a more complex aspect.   Damages may arise to the city both from the exercise of the franchise and from the manner of performing the lighting contract.   The poles may be so placed or so out of repair as to constitute defects in the highway, and subject the city to liability, or impose upon the city otherwise unnecessary expenses in the maintenance of the streets.   In this aspect it is germane alone to the franchise granted by the state, through the agency of the city. But damages may also arise from breaches in the performance of the duty to supply street lighting.   The city may thereby be put to expense for purchase of lights deemed by it necessary, and otherwise suffer damage of the same character as would arise if there were purely and simply a lighting contract, disassociated from the franchise.   Hence, if properly demanded, the refusal of the company to renew its

bond might constitute such a breach on its part of the contract as to justify the city in terminating it,—in deeming itself unsafe to proceed therewith in the absence of this bond which the company had contracted to furnish as one of the considerations upon which it was to earn payment for lights furnished. In this aspect, however, we think, technically, the city has not placed the corporation in default with reference to the renewal of the bond, since it has made no sufficient demand for a new bond to protect itself against these contractual aspects of liability, within the promise of the company to supply one. The sole demand was by ordinance of August 1, 1899, for a bond "to indemnify the city from all loss or damage by reason of the privileges granted them under their franchise." A bond satisfying this demand would have no bearing upon or relation to damages suffered by reason of nonperformance or misperformance of the lighting contract, and we therefore conclude that the failure to comply therewith constitutes no defense to demand for payment. Had the demand been as broad as the ordinance requirement, a different question would be presented.

The remaining undertaking, breach of which is alleged and found to have occurred, is as follows: Plaintiff's assignor "hereby agrees to furnish the city of *Kaukauna*, for street and public lighting, incandescent electric lights, . . . of twenty-five candle power, at a cost," etc. This agreement may also have a complex aspect, as it may well have been one of the considerations and conditions upon which the city deemed proper to grant the plaintiff the right to use the public streets for distribution of its product to its customers. Whether so or not, it very clearly must have been a most important consideration of the city's promise to pay for street lights furnished to it. The duty of effectively and economically lighting its streets is one of the most important which a city has to perform, and one which can be

properly accomplished only by adoption of some system. While it is possible, perhaps, to make an attempt at street lighting by means of an oil lamp at one corner, a gasoline lamp at another, or gas and electric lights in alternation, such method, generally speaking, is neither practical, effective, nor economical. According to modern practice, a city seems to have but a choice between two methods of performing this duty,—either to contract with some private corporation, or to erect and operate a plant of its own. In the case of a small city, a binding acceptance of the former alternative, in practical effect, is exclusive of further consideration of a general policy. If thenceforward the city must buy of that corporation any considerable portion of its lights, it can neither buy others of any one else, nor economically supply them itself; for the whole field of such a city is ordinarily none too large to warrant installation of a plant, either by private capital or by the city, and, after the final surrender of a part of such field to one, supply of light to the remainder by another can only be accomplished at such expense as to make the attempt impracticable. In view of these considerations, it is not open to doubt that the parties understood and intended by their contract that the city must be dependent on the plaintiff for all electric lighting which it, as the custodian and guardian of the public welfare, should deem necessary; hence that the plaintiff bound itself to furnish all so necessary, at least within reasonable requirements. A construction that the company was to furnish only so many lights and at such places as it chose must proceed upon the assumption that the city intended to abrogate its power to perform its public duty,—an assumption not to be adopted except in an entirely clear case. Nor can it be doubted that this agreement by the plaintiff to furnish such lights as the city might, in reason, deem necessary and demand, lay at the very foundation of the promise by the latter to pay the price therefor. If the city must buy of the company those

lights already installed, it cannot practically or economically obtain elsewhere others which it may deem necessary; while, on the other hand, if absolved from duty to purchase any from plaintiff, it is much more feasible for the city either to offer a contract to other parties, or to erect a plant of its own. It is not conceivable that the parties in a contract like this intended or understood merely that the furnishing of each lamp should be the sole consideration of the promise to pay the contract price thereof. That would not accomplish at all its main purpose, namely, to supply the city with a system of electric street lighting to satisfy the needs of the public. To this end, the placing of lamps when and where needed is quite as essential as supplying an electric current to those which are placed, and is quite as surely the consideration of the promise to pay. It is, too, quite incapable of compensation in damages or by deduction; for no one can tell how much the contract price was enhanced in consideration of the duty to instal lights where demanded, and the injury to the city cannot be measured by money.

Thus the plaintiff stands before the court convicted of failure to perform the service which the parties agreed should arouse the duty of defendant to make the payments sought to be enforced. Generally speaking, no rule of law is more elementary or better settled than that one cannot recover the contract price when he has not performed the precedent contract consideration material to the contract purpose, and not measurable in damages. *Ellen v. Topp,* 20 Law J. Exch. 241; *Graves v. Legg,* 23 Law J. Exch. 228; *Robinson v. Brooks* (C. C.) 40 Fed. 525; *Davis v. Hubbard,* 41 Wis. 408; *John Pritzlaff H. Co. v. Berghoefer,* 103 Wis. 359, 364, 79 N. W. 564; *Coorsen v. Ziehl,* 103 Wis. 381, 384, 79 N. W. 562. This rule has its modifications, arising out of conduct of the defendant upon which can be predicated an assumption of acceptance, consent, or waiver. When this exists, so that the plaintiff has parted with its property or

service upon the justifiable belief that it is voluntarily received by the defendant as satisfying the contract, the latter will not be permitted to defend on the ground of imperfections or differences which it might have detected and made basis of refusal before receiving the benefit or permitting plaintiff to suffer the loss. *Locke v. Williamson*, 40 Wis. 377; *Monroe Water Works Co. v. Monroe*, 110 Wis. 11, 21, 85 N. W. 685; *Bostwick v. Mut. L. Ins. Co.* 89 N. W. 538.[1] This case is, however, barren of any such circumstances. The city waited a reasonable time (some three months) after demanding the additional lights, until plaintiff's purpose not to furnish them became clear, paid for the lights actually furnished meanwhile, and then notified plaintiff that it would no longer accept or pay for lights furnished by it. It did not accept any further service. True, street lights continued to burn, but not with the city's consent, and without any power on its part to prevent them. Clearly, therefore, the plaintiff has not performed the lighting contract on its part during the period covered by the bills sued on, and the city has not accepted or voluntarily received any of the benefits thereunder, upon which its promise to pay depends; and a complete defense was set up and proved against the plaintiff's cause of action at law, so that it was not entitled to recover, and judgment dismissing the complaint would have been proper.

The defendant in this case further contends that by reason of plaintiff's breach the principal purpose of the lighting contract had been defeated, and the plaintiff had conclusively declared its purpose not to be bound thereby as to one of the essential elements, whereby the city had a right to, and did, treat the contract as abandoned, and finally terminated it by its resolution and notice of November 7, 1899. The right of one party to terminate a continuing contract

---

[1] A rehearing was granted in this case June 19, 1902, and it has not yet been finally determined or reported.—Rep.

upon substantial breach of its essential elements by the
other, often inaccurately called "rescission," is one which
has been treated in cases without number, both English and
American, and with extreme refinement and technicality.
Many of those cases are collated in a note to *Lake Shore &
M. S. R. Co. v. Richards,* 30 L. R. A. 33 (152 Ill. 59, 38
N. E. 773) ; and the subject has been treated in *Norrington
v. Wright,* 115 U. S. 188, 6 Sup. Ct. 12; *Farmers' L. & T.
Co. v. Galesburg,* 133 U. S. 156, 10 Sup. Ct. 316; *School
Dist. v. Hayne,* 46 Wis. 511, 1 N. W. 170; *Hoffman v.
King,* 70 Wis. 372, 36 N. W. 25; *Walsh v. Myers,* 92 Wis.
397, 402, 66 N. W. 250. We do not, however, find it
necessary to decide whether defendant has effectively ter-
minated the contract in question, so that, should plaintiff,
after the notice of termination, instal the additional lamps,
it would be too late. We think defendant is foreclosed from
such contention by reason of its course in this litigation, of
which we shall speak later.

It appears from the foregoing that the plaintiff, by reason
of nonperformance of the lighting contract on its part, was
not entitled to recover at all upon its cause of action; hence,
of course, a judgment allowing recovery upon certain con-
ditions cannot prejudice the rights of the appellant. If not
entitled to recover, it cannot be injured by placing conditions
upon the privilege of recovery. So, as to that part of the
judgment which provides that, upon burying wires and giv-
ing new bond within four months after notice of the entry of
judgment, it may recover the sum sued for, without interest
and without costs, the appellant has no just ground of com-
plaint; and, were that all of the judgment, we should feel
bound to affirm. But that is not all of the judgment. There
is in addition a mandatory decree for specific performance
of two of the duties assumed by the plaintiff under the
ordinance, namely, the duty to bury that part of its wires
specified in the ordinance of October 3, 1899, and to give

a bond, not in accordance with the demand of the resolution of August 1, 1899, but in complete accordance with the original franchise ordinance. We have already pointed out that the burying of the wires and the giving of a bond conditioned as demanded on August 1, 1899, are neither at all germane to the electric lighting contract upon which the suit is brought.

It is an interesting question whether a city, having secured for the benefit of its citizens, constituting a part of the public, certain agreements as a condition of the granting of a franchise on behalf of the state, may maintain an action in a court of equity for specific enforcement of those agreements. The subject is learnedly discussed, and an affirmative conclusion reached, in *Burlington v. Burlington Water Co.* 86 Iowa, 266, 53 N. W. 246; and *mandamus* was sustained in *State ex rel. Wis. Tel. Co. v. Janesville St. R. Co.* 87 Wis. 72, 57 N. W. 970. But in this case an obstacle lies at the threshold of considering and deciding that question. That relief is sought, not by an original suit in equity, but by way of counterclaim to a simple action at law for the recovery of money upon a contract which happens to be contained in the same writing as that which grants the franchise and imposes the conditions upon it. As we have already said, breaches of the conditions which relate only to the franchise can constitute no defense against the duty of the city to pay for the electric light which it agreed to purchase. They affect only the right of the plaintiff to continue to use the public streets for carrying on its business of manufacturing and selling such light, and so long as the state chooses to allow that franchise to continue, and the contracting company does furnish the lights as agreed, the duty of the city to pay therefor is not diminished or in any wise affected by the breaches of those conditions or agreements, unless, indeed, there should thereby arise a money injury to the city, for which it might be entitled to bring suit, and there-

fore might counterclaim to diminish or defeat the plaintiff's money recovery. From the earliest adoption of our Code authorizing counterclaims, it has been held, in pursuance of former New York decisions inhering in the statute when adopted by us, that a demand may be pleaded as counterclaim only when, if established, it would in some way qualify or defeat the judgment to which the plaintiff would otherwise be entitled. *Dietrich v. Koch,* 35 Wis. 618; *Heckman v. Swartz,* 55 Wis. 173, 12 N. W. 439; *Weatherby v. Meiklejohn,* 56 Wis. 73, 13 N. W. 697. Now, here it is apparent that quality does not exist. It is entirely consistent that the plaintiff, if it had fulfilled its lighting contract, might be entitled to recover the full contract price, and yet be under an obligation to perform certain of the other conditions contained in the same ordinance, pertaining to the franchise aspect thereof. If it were conceded. that the defendant city might maintain a bill in equity to specifically enforce the contract to bury wires, that would in no wise defeat or qualify the right of the plaintiff to its money judgment. Hence it seems clear that, as to the two conditions or agreements made the subject of a decree of specific performance in this action, the defendant could not interpose a counterclaim for such result, even if it might maintain an independent suit for the same relief. So far, therefore, as the judgment before us contains a mandatory decree requiring the plaintiff, absolutely and not in the alternative, to bury wires and give bond, it is erroneous, to the hurt of the plaintiff. Hence we conclude the judgment must be modified by eliminating that portion decreeing specific performance of these obligations.

In sustaining the rest of the judgment, which gives plaintiff a money recovery on conditions, when it is entitled to no recovery at all, a word of explanation or interpretation seems necessary. In the counterclaim the defendant sets up past breaches, and threatened continuance of breaches, of

the contract, including those which we have held not germane to the cause of action stated in the complaint, and also the refusal to instal lights, which we have held to be germane. It substantially offered that, if the court concluded that the contract had not been effectively terminated and rescinded, the city was willing to continue it upon condition that all of the refusals to abide its terms were abandoned by the plaintiff, and to pay such sum as it ought to pay for any lights which had been furnished. It prayed variety of equitable relief, in the form of injunction, both prohibitory and mandatory, and in the form of specific performance. The glaring error in the judgment, which we have already pointed out, was the granting of absolute specific performance of duties having no relation to the cause of action stated in the complaint. The refusal of some form of equitable relief with reference to the failure of the plaintiff to instal additional street lights, if erroneous, was prejudicial only to the defendant; hence not to be supplied upon the plaintiff's appeal. We must, however, construe the judgment as taking the defendant at its word, and decreeing that the rescission or termination of the contract, if accomplished, is abandoned by the city; that the contract stands in full force against both parties; that plaintiff, not being legally entitled to recover any sum upon the street-lighting contract, should yet recover a somewhat arbitrary sum when and if it repaired certain omissions; and that its failure to repair such past omissions shall merely result in loss of the specified money recovery. Thus viewed, the judgment, at worst, erroneously denied only rights claimed by the defendant, except as it decreed specific performance. Its spirit was to relieve against the rescission claimed by the defendant, whom we consider to have assented thereto by not appealing. Its plan, also, was to allow plaintiff a reasonable opportunity after its rights were determined to perform the conditions whereby it should earn the money recovery.

But those rights never have been correctly determined; hence we deem it but equitable that the appellant should still have the four months, after final entry of corrected judgment, to perform the conditions imposed. We therefore shall reverse and remand with directions to enter a new judgment omitting the erroneous portion, instead of modifying the judgment here as of its original date.

*By the Court.*—The judgment is reversed, and the cause remanded with directions to enter judgment to the same effect as before, excepting the positive command therein contained for specific performance of certain contract provisions.

BARDEEN, J. I fully concur in the result reached in this case. It was not found necessary to determine whether the action taken by the city was effectual to constitute a rescission of its lighting contract. It attempted not only to rescind the contract for lighting, but also to put an end to its franchise to use the streets. As regards its attempt to oust the company of its franchise rights, granted to it by the city as the agent of the state, its action is held nugatory. That power rests in the state alone. The city claimed the right to rescind the lighting contract. That right is said to have been based upon the refusal of the company to instal some half a dozen incandescent lights ordered by the city. This refusal arose from a claim by the company that the second contract superseded the first, to the extent that further incandescent lights could not be required by the city. There was no claim that the company had abandoned its contracts, or was seeking to avoid their obligations, only in the respect just mentioned. The dispute was *bona fide,* and the claim of the company had some elements of plausibility. In such a case I very much doubt the power of either party to effectually terminate the contract by a mere declaration to that effect. But even if that power exists, under the facts

here presented, the court should be slow to uphold it. The language of the supreme court of the United States in *Rutland Marble Co. v. Ripley*, 10 Wall. 339, is quite applicable:

"That one party to an executory contract, partly executed, has violated his engagements, is generally no sufficient reason for a decree by a court of equity, at the suit of the other party, that the contract shall be annulled."

See *Lundahl v. Hansen*, 147 Ill. 504, 35 N. E. 741; *Minah C. M. Co. v. Briscoe* (C. C.) 47 Fed. 276. Again:

"It is not every partial neglect or refusal to comply with some of the terms of a contract by one party which will entitle the other to abandon the contract at once. In order to justify an abandonment of it, and of the proper remedy growing out of it, the failure of the opposite party must be a total one. The object of the contract must have been defeated or rendered unattainable by the misconduct or default." *Selby v. Hutchinson*, 9 Ill. 319.

Another element entering into the question of rescission is that the party rescinding must, so far as possible, put the opposite party in his original position. In continuing contracts this is frequently impossible, and hence the courts, when there are *bona fide* disputes, often say that the injured party must come into court before the rescission can become effectual. A declaration of rescission may become the basis for the court to declare it, but it is not always the case that the party himself has the right of absolute rescission. The courts recognize the distinction between executed and executory or continuing contracts in this regard, and it is one, I think, the city should have in mind in its future dealings with the company. The right of rescission at law usually rests upon such a refusal of the one party to perform as entitles the other to believe the contract has been abandoned. Such was the case of *School Dist. v. Hayne*, 46 Wis. 511, 1 N. W. 170. When the matter gets into a court of equity, the court may or may not decree a rescission, according to the equity of the case, and may even relieve from forfeiture

when the justice of the case demands, as in *Gates v. Parmly*, 93 Wis. 294, 66 N. W. 253, 67 N. W. 739. While the default of the company may be, as held in this case, sufficient to prevent a recovery of periodical payments due on the contract, it does not necessarily follow that the city may consider the contract at an end. If its remedy at law is not deemed adequate, its rights may be protected and enforced in the forum of equity, either by a decree of rescission or specific performance.

MARSHALL, J. I concur in the foregoing opinion by Mr. Justice BARDEEN.

Both parties moved for a rehearing. The motions were denied May 13, 1902.