## RIDER and others *vs.* POND.

The plaintiffs, who were jointly interested in an oil manufactory, entered into a contract with R. & Co., by which it was agreed that the plaintiffs should, within 75 days, enlarge their works, so as to be able to produce a double quantity of oil, and when this should be done R. & Co, were to advance $10,000 to them, to be refunded, as provided in the agreement. The plaintiffs were to continue to manufacture the increased quantity and to deliver one half of it to R. & Co., who were to receive the consignments, and make further advances upon them, and sell them on commission. As a further security for the $10,000 the plaintiffs agreed that "when the same was advanced they would deliver to R. & Co. bills of sale of the oil works, and policies of insurance thereon, for $10,000. Subsequently the plaintiffs, with the consent of R. & Co., sold their works, and their interest in this agreement, to P., who agreed to take the place of the plaintiffs in said contract, and to do every thing which it bound the plaintiffs to do; but the plaintiffs were to receive the $10,000 from R. & Co. for their own benefit. In an action against P. for refusing to deliver to R. & Co. such bill of sale and policies of insurance, as security for the $10,000 to be advanced to the plaintiffs, the defendant alleged in his answer that he prepared the securities, and gave notice to R. & Co. that he was ready to perform the contract on his part, and requested them to pay the $10,000 and receive the securities, but that R. & Co. failed to do so, or to perform any of the provisions of the contract incumbent on them to perform, and that for that reason the defendant did not deliver the securities. *Held*, on demurrer, that the two acts—the giving of the securities and the payment of the money—were to be contemporaneous; that P. had fulfilled his part of the contract by being ready and offering to perform it, and that he was not bound, and would not have

been authorized, to deliver the securities without receiving the money; and that consequently the answer was sufficient. ROOSEVELT, J., dissented.

*Held also*, that if the plaintiffs intended that P. should deliver the securities without the money being paid, they should have expressly waived the condition, and have alleged such waiver, in their complaint.

THIS was an appeal from an order made at a special term, allowing a demurrer to the defendant's answer. The complaint alleged that on 30th May, 1850, a contract was made between the plaintiffs, who compose the firm of William Rider & Brothers, of New-York, and Lewis S. Robbins, parties of the first part, and E. G. Roberts & Co. of England, parties of the second part. That the parties of the first part were then jointly interested in an oil manufactory in Brooklyn, and it was agreed that within 75 days they should enlarge their works so as to be able to produce a double quantity, and when they should be able within the said time to produce this quantity, Roberts & Co. were to advance $10,000 to them, to be refunded as provided in said contract. The parties of the first part were to continue to manufacture this increased quantity, and to deliver one half of it to Roberts & Co. in London or New-York. Roberts & Co. were to receive their consignments and make further advances upon them, and sell them on commission, retaining enough of the proceeds to cover their advances. As a further security for the $10,000, the parties of the first part agreed, " when the same was advanced," to deliver to Roberts & Co. bills of sale of said works, and policies of insurance thereon for $10,000, as a further security for said advance. That on the 23d of July, 1850, and before the parties had entered upon the performance of this agreement, the plaintiffs, with the consent of the other parties, sold their works and their interest in this agreement to the defendant. That in consideration thereof, the defendant agreed to take the place of the plaintiffs in said contract, and to do every thing which the contract bound the plaintiffs to do; but the plaintiffs were to receive the $10,000 from Roberts & Co., and the defendant was not to claim that $10,000. That this contract was made with the assent of all the parties to the original agreement. That on the 29th of October, 1850, the plaintiffs

requested the defendant to deliver such bill of sale and policies of insurance to Roberts & Co:, as security for $10,000, to be advanced by Roberts & Co. to the plaintiffs, and the defendant refused, to the damage of the plaintiffs of $10,000. Judgment was asked for $10,000, with interest from 29th October, 1850.

The defendant, by his amended answer, denied that the contracts set forth in the complaint were correctly given there, and set forth the contract literally, as executed. He alleged that on the 23d of July, 1850, the plaintiffs indorsed on that contract an instrument selling their works to the defendant, and assigning to him all their rights under the contract, except to receive the $10,000, to go on with the contract at his risk. That on the same day the defendant delivered to the plaintiffs a contract to assume and take the place of the plaintiffs under the original agreement, and to do as the plaintiffs were to do under that contract, except to receive the $10,000, which was to belong to the plaintiffs, the defendant indemnifying the plaintiffs against said contract. He denied that Roberts & Co. consented to the contract between the plaintiffs and the defendant; or that the plaintiffs requested him to give the bill of sale, &c. except as stated. He also denied that he had failed to perform his agreement, except as stated; and denied all damage to the plaintiffs for any of his acts. The defendant averred that he was prepared to perform the contract on the 30th September, 1850, and notified all other parties, and requested Roberts & Co. to pay the $10,000 to the plaintiffs, and receive from the defendant the bill of sale and policies of insurance. That Roberts & Co. did not pay the $10,000 to the plaintiffs, and for that reason the defendant did not deliver to Roberts & Co. the bills of sale, &c. He admitted that the plaintiffs requested him, on the 29th October, 1850, to deliver the bills of sale and policies to Roberts & Co., and alleged that he was at that time prepared to perform the contract on his part, and that he tendered to Roberts & Co. the bills of sale, &c. That Roberts & Co. did not then, and had not before, paid the $10,000 to the plaintiffs; and Roberts & Co. refused to take said bills of sale, &c. and pay said $10,000, and had failed to perform said contract on their part.

The plaintiffs demurred to that part of the answer which alleged that the defendant was fully prepared on the 30th September, 1850, to perform the contract on his part, and that he notified the other parties of his readiness, and requested Roberts & Co. to pay they $10,000 and take the bill of sale, &c., and that because Roberts did not make the advance, he did not give him the bill of sale, &c., and they assigned the following causes of demurrer : 1st. That the agreement of the defendant to deliver the bill of sale was an independent one, not qualified by any condition to be previously performed by any one. 2d. That the failure and neglect of E. G. Roberts & Co. to pay · said money, or perform his contract, would not excuse the defendant from delivering the bill of sale mentioned in his agreement with the plaintiffs. 3d. That there was no averment of an offer or tender by the defendant, at the time mentioned, of a bill of sale to E. G. Roberts & Co., or to the plaintiffs. 4th. That on the contrary, it positively appeared that the defendant did not offer or tender a delivery of the bill of sale, and that his notice of readiness was untrue.

*Wm. H. Leonard,* for the plaintiff.

*H. H. Stuart,* for the defendant.

MITCHELL, P. J.   The plaintiffs had entered into a contract with Roberts & Co., by which they were to execute a mortgage on machinery, &c. to Roberts & Co., and assign a policy of insurance to the latter to the amount of $10,000, and Roberts & Co. were to advance to them this sum of $10,000. The two acts—the giving of the securities and the payment of the money—were to be contemporaneous : either party would fulfill his part of the contract, by being ready and offering to perform it, if the other would perform his part. If the plaintiffs had executed the mortgage, and assigned the policy, and given them to an agent and told him to go and complete the execution of the contract with Roberts & Co., the agent would be inexcusable if he delivered the securities without receiving the money. The plain-

Rider *v.* Pond.

tiffs assigned to Pond the property to be mortgaged, and a valuable contract made by Roberts & Co. with them, excepting for their own benefit the $10,000 to be paid by Roberts & Co. The plaintiffs then requested Pond to execute to Roberts & Co. the mortgage on the machinery and assign to them the policy, to the amount or sum of $10,000, as security to Roberts & Co. for the sum of $10,000, to be advanced by Roberts & Co., as aforesaid. This is the whole allegation in the complaint, as to the nature of the request made to Pond. The complaint alleges that Pond refused, and that the plaintiffs have thereby lost $10,000.

It is plain that there was no express authority to Pond to execute the securities if Roberts & Co. did not pay the money; and if the complaint had alleged that under this authority Pond had delivered the securities without the money being paid, and so had caused damage to the plaintiffs, there would be some ground for the charge. The plaintiffs now say that they meant that the securities should be delivered without the money being paid. If that was what they meant, and if they had a right to waive the payment, they have not expressed that meaning in the complaint. The contrary would be inferred, as the payment of the $10,000 was to be the only consideration for the mortgage, and the payment of the money was the condition on which the securities were to be given ; and until some express direction to the contrary was given Pond would be bound to know that he was not to deliver the securities until the money should be paid, to the satisfaction of the plaintiffs. The waiver of this condition should have been averred by the plaintiffs, if they meant to waive it.

The defendant answers that he prepared the securities and gave notice to Roberts & Co. and to the plaintiffs that he was ready to perform the contract on his part, and requested Roberts & Co. to pay the $10,000 and receive the securities from him, but that Roberts & Co. failed to do so, and failed to perform any of the provisions of the contract incumbent on them to perform ; and that for this reason the defendant did not deliver the securities. The plaintiff demurred to this answer.

For the reasons before shown, the demurrer is bad; as the defendant offered to fulfill the contract and was ready to do so, and gave notice to Roberts & Co., and the plaintiffs to that effect. If the plaintiffs had replied that at or before the time of the tender by the defendant they notified him to deliver the securities without requiring the money to be paid, they might have supplied the omission in the complaint; which would perhaps have covered the difficulty: or, if they had gone to trial on the answer as it was, if a reply was not then necessary to an answer setting up new matter as a defense, the court would have allowed them to amend their complaint and prove the precise nature of the request. But they chose not to do so, and to demur. The court therefore can only decide whether to such a complaint the answer is not good. It is so considered. The judge at special term noticed that the pleadings were imperfect, and a very different question from the one now decided was principally argued before him. He suggested a correction of the pleadings; but the parties chose to leave them as they are and to enter an order sustaining the demurrer. It seemed to be the desire of both parties that the court should express its opinion on other questions. By the contract between Roberts & Co. and the plaintiffs, and which was assigned to Pond, (excepting to the plaintiffs the $10,000,) Roberts & Co. were to make advances to the plaintiffs of the full cost of oil to be manufactured by them and of expenses thereon, and take a share in the business, so that if it should be unprofitable no part of the $10,000 to be advanced by him should be returned to him, and if there were profits he was to share in them. He was also to receive commissions on sales, and on guaranty. All these obligations on his part were assigned to Pond, and the expected performance of them was the inducement to him to take the assignment and agree to allow the plaintiffs to have the $10,000. If Roberts & Co. were ready to fulfill all the engagements on their part, to Pond, and carry out the agreement faithfully, it was immaterial to Pond what arrangement Roberts & Co. and the plaintiffs made as to the payment of the $10,000. Those two parties might agree that after it was paid by Roberts & Co. to the plaintiffs, the plaintiffs should re-

Rider *v.* Pond.

turn it to Roberts & Co., if this were done in good faith to Pond. But a case might be supposed in which Pond would be under no obligation to pay the money, notwithstanding such an agreement. If the plaintiffs, as an inducement to Pond to take the assignment, had represented to him that the business was so profitable and safe that Roberts & Co. had agreed to advance the $10,000 and leave it at the risk of the business, and this had led Pond to take the assignment of the contract and expend a large sum of money in the improvement and extension of the assigned property, and if, as now intimated, Roberts & Co. had, by arrangement with the plaintiffs, escaped from the liability to make the advance, the misrepresentation would have discharged the defendant, at least to some extent. He would have been discharged in part, at least, although he should not return the assigned property, as, by the wrongful act of the plaintiffs, he had been led to expend a large sum on that property, which he would not be able to separate from it, and so his inability to restore it would arise from the act of the plaintiffs themselves. Something like this was barely intimated on one side. If this were all done in good faith, and with notice to Pond, before he made the bargain, he cannot complain. If it was done in such a way as to defraud him, he is not bound.

Although questions somewhat of this nature were discussed on both sides, the pleadings do not present them, and they would not have been noticed, except for the urgent desire of one side that the court should not pass them by.

The judgment of the special term is reversed, but without costs, as the decision is not on the points mainly discussed. Either party may amend his pleadings, without costs.

CLERKE, J., concurred.

ROOSEVELT, J. As between Pond and the Riders it was expressly agreed that the $10,000 was to be paid to the latter "to be used by them for their own use and benefit and without any account to Pond." They had a perfect right therefore to accept it in notes or checks, or in any form they saw fit; or, if so

disposed, to waive it altogether.   Pond, therefore, if they re-- quested it, was bound to execute and deliver the mortgage, whether the money was paid or not.   It was their money and not his ; and the payment was to be made to them and not to him, and for their use and their use alone, and not his.   The averment in the complaint that he was requested to execute and deliver a mortgage as security for the sum "to be advanced as aforesaid," is, on this point, *merely descriptive* of the sum in-- tended, and in no way implies a conditional request.   The words quoted are used not to imply that he was to deliver the mortgage only in the event of the money being advanced, but to indicate that the $10,000 for which it was to be given was not any sum of that amount, but the particular $10,000 spoken of in the pre-- vious agreement as the sum which Roberts & Co. were to advance.

If the plaintiffs then absolutely and unconditionally requested Pond to execute and deliver to Roberts & Co. a mortgage for the $10,000, is it any answer for Pond to say that he " gave notice that he was ready to perform, and requested Roberts & Co. to pay the plaintiffs the $10,000 and receive the securities, and that Roberts & Co. neglected to pay the plaintiffs ?"   It seems to me that such an answer by not denying admits that he refused to do what the plaintiffs requested, and what they had a right to request him to do.   And as the plaintiffs, by the agree-- ment, were to receive $10,000 as a consideration for their prop-- erty sold to the defendant, to be raised by a mortgage to be executed by him on the property sold, and as he has refused to execute the mortgage which would enable them to get the money from others, he must, as the only and the just alternative, pay the money himself.

Demurrers, however, unless in very clear cases, are not en-- couraged by the new code ; and the party demurring, therefore, to the insufficiency of his adversary's pleading, should be partic-- ularly careful not himself to commit the first fault.   In this case the language of the complaint, it must be admitted, is not as dis-- tinct and certain as it might be.   The plaintiffs, strictly, should have averred in precise terms that they requested the defendant to execute and deliver the securities, *whether the* $10,000 *was*

*simultaneously paid or not.* However the complaint, in that respect, after some labor of construing, may strike my mind, it is manifest from the different impression produced on the minds of my colleagues, that it is not free from ambiguity. Under these circumstances I am inclined to concur with them in the conclusion that the plaintiffs' objections, in the form of demurrer to the defendant's answer, should not be allowed, but that the pleadings on both sides should be made more definite and certain, as suggested by the judge at special term; or that the parties should go to trial on the complaint and answer as they stand, postponing all amendments till the evidence shall have shown the actual truth of the case.

Judgment reversed.

[NEW-YORK GENERAL TERM, June 1, 1854. *Mitchell, Roosevelt* and *Clerke,* Justices.]