COLLAT, Appellant, vs. GOTTSCHALK and others, Respondents.

*March 19—April 5, 1910.*

*Contracts: Performance: Pleading: Recitals creating obligations: Conditions precedent.*

1. In a complaint a general averment of performance of a contract on the part of the plaintiff is overcome by detailed and specific facts therein stated which show a failure of performance.
2. Recitals in a contract in the form of a preamble may create express obligations between the parties if they contain words of binding import.
3. Where a party to a contract agreed that he would exchange with a corporation, not a party to the contract, certain shares of stock in other corporations named, not parties to the contract, for 73,750 shares of the stock of the corporation first mentioned, and that said shares so received by him should be held in trust by a designated third person, performance on his part is not shown by an averment that he received only 63,750 shares in exchange and failed to deposit any of these in trust because the other parties to the contract, though having the power so to do, failed and refused to procure for him the remaining 10,000 shares, there being no express agreement by such other parties to procure such shares for him.

4. Covenants prior with reference to time of performance, going to the consideration of the contract, and of such nature that breach thereof cannot be adequately compensated in damages, will (nothing else appearing to the contrary) be so construed as to require performance thereof before the duty of performance arises on the part of the other party to the contract.

5. A covenant that shares of stock shall be placed in trust with a third person who shall have power to vote the same, in consideration of which the other party to the contract agrees to sell other shares of the same corporation to the public for the account of the party so required to put his shares in trust, is such a covenant as is described in paragraph 4.

Appeal from a judgment of the circuit court for Milwaukee county: J. C. Ludwig, Circuit Judge.    *Affirmed.*

For the appellant there were briefs by *Churchill, Bennett & Churchill,* and oral argument by *W. H. Churchill.*

For the respondent *Mary S. Fish,* executrix, there was a brief by *Irving A. Fish* and *W. W. Storms;* for the respondents *Gottschalk* and others there was a brief by *Glicksman, Gold & Corrigan;* and the cause was argued orally by *Nathan Glicksman.*

Timlin, J.    The action is upon the following agreement:

"Memorandum of agreement made and entered into this 20th day of March, 1903, by and between *Theodore Collat,* of Grand Rapids, Michigan, party of the first part, and *S. W. Gottschalk, G. H. Gottschalk,* F. M. Fish, and *John K. Fish,* all of Milwaukee, Wisconsin, parties of the second part:

"Witnesseth, that whereas the party of the first part is owner of ten thousand (10,000) shares of preferred stock in the Advance Oil Company of Augusta, Maine, and twenty-five thousand (25,000) shares of common stock of said company, and does also own fifteen thousand (15,000) shares in the Crown Oil Company of Augusta, Maine, and does also own ten thousand (10,000) shares in the Alma Gold Mining Company;

"And whereas, it is deemed desirable to sell the holding of said companies to the Advance Mineral Company;

"And whereas, said party of the first part has and by these

presents does agree to accept in lieu of the stock so held by him as above seventy-three thousand seven hundred and fifty shares of the capital stock of said Advance Mineral Company;

"And whereas, said party of the first part further agrees that said stock in the Advance Mineral Company so received in exchange, except twenty-three thousand seven hundred and fifty shares thereof, shall be held by W. M. Gottschalk as trustee, to be held and voted by him until such time as a majority of the directors of the Advance Mineral Company shall resolve that the stock so held shall be released from such trusteeship;

"And whereas, there is to be formed the Badger Investment Company, the purpose of which company is to purchase stock in the Advance Mineral Company at the ratio of sixty-eight thousand (68,000) shares of stock for each twenty-five (25) shares subscribed to the capital stock of said company:

"Now, therefore, in consideration of such an agreement, parties of the second part do hereby agree to subscribe for fifty shares of the capital stock of the Badger Investment Company for the use and benefit of the party of the first part, which said stock so subscribed for will represent one hundred and thirty-six thousand (136,000) shares of the capital stock of said Advance Mineral Company; the parties of the second part do hereby agree and bind themselves that such purchase by them shall in no way create any liability on the part of the party of the first part; and the party of the first part does further agree that the said stock shall be held by the Badger Investment Company and shall be sold by them at such times and such prices as the board of directors of said company shall determine.

"And in consideration of such agreements and one dollar to us in hand paid, the receipt whereof is hereby acknowledged, the parties of the second part hereby guarantee that the party of the first part shall receive from the sale of such stock the sum of five thousand dollars ($5,000) and interest at the rate of five per cent. per annum from August 27, 1902, within two years from the date hereof. That is to say, the first party is guaranteed such sum whether any of said stock is sold or not.

"It is further agreed by and between the parties hereto that after said party of the first part shall have received said sum of five thousand dollars and interest, then so much of said Advance Mineral Company's stock as remains unsold shall be sold for the joint account of the parties to this contract, viz., one half of the proceeds to go to the party of the first part and one half to the parties of the second part.

"It is further agreed by and between the parties hereto that in case the Advance Mineral Company does not acquire the properties above named, this agreement shall be null and void and of no effect.

"It is further understood that in consideration of the mutual agreements herein contained, first party is to be held harmless by the second party upon an alleged purchase of an additional ten thousand (10,000) shares of preferred stock of the Advance Oil Company; that is to say, said stock is to be returned and second parties guarantee that first party shall not be called upon to pay for the same.

"In witness whereof the parties have hereunto set their hands and seals the date first above mentioned.

"THEODORE COLLAT.    [Seal.]
"S. W. GOTTSCHALK.    [Seal.]
"G. H. GOTTSCHALK.    [Seal.]
"F. M. FISH.    [Seal.]
"JOHN K. FISH.    [Seal.]

"I do hereby certify that fifty (50) shares of the capital stock of the Badger Investment Company have been subscribed for in the name of *S. W. Gottschalk* and F. M. Fish, which said fifty shares represent the ownership of one hundred and thirty-six thousand (136,000) shares of the capital stock of the Advance Mineral Company, and I do further certify that said subscription is for the use and benefit of *Theodore Collat,* of Grand Rapids, Michigan, in accordance with an agreement signed by *Theodore Collat,* as party of the first part, and *S. W. Gottschalk,* F. M. Fish, *G. H. Gottschalk,* and *John K. Fish,* parties of the second part, which agreement is dated the 20th day of March, 1903, and said subscription is subject to the terms and conditions set forth therein.

"Dated Milwaukee, Wisconsin, March 20, 1903.

"F. M. FISH.
"S. W. GOTTSCHALK."

The breach averred is that more than two years have elapsed since the date of said agreement, and that demand has been made for the sum of $5,000 and interest, but the same has not been paid nor has any part thereof. Performance on the part of the plaintiff is averred as follows:

"The plaintiff duly surrendered all of the said stock held by him in said various companies in said agreement mentioned, all in accordance with the terms of said contract on his part to be kept and performed, and that the plaintiff has duly and prior to the commencement of this action performed all the terms and conditions of said agreement on his part to be kept and performed; and, in addition thereto, the plaintiff at all the times herein mentioned was, and still is, ready and willing to permit his stock in said Advance Mineral Company so received and exchanged for said other stock, except 23,750 shares thereof, to be held by W. M. Gottschalk, mentioned in said agreement, as trustee, to be held and voted by him until such time as a majority of the directors of said Advance Mineral Company shall resolve that the stock so held should be released from such trusteeship, and that the plaintiff duly and frequently, subsequent to the execution of said contract and prior to the commencement of this action, demanded of the defendants that they cause to be issued to him the 73,750 shares of the capital stock of said Advance Mineral Company to which he was and is entitled to receive in lieu of the stock held by him in said Advance Oil Company of Augusta, Maine, Crown Oil Company of Augusta, Maine, and Alma Gold Mining Company, and by him surrendered as aforesaid pursuant to the terms of said agreement, in order to enable the plaintiff to deliver 50,000 shares of said stock to said W. M. Gottschalk as trustee, to be held and voted by him until such time as a majority of the directors of said Advance Mineral Company should resolve that the stock so held should be released from such trusteeship; that the plaintiff frequently, subsequently to the execution of said contract and prior to the commencement of this action, duly offered to make delivery to the said W. M. Gottschalk as trustee for the purpose aforesaid of all of plaintiff's stock in said Advance Mineral Company, which in and by the terms of said contract he agreed should be held by said W. M. Gottschalk as trustee for the purpose

aforesaid, as soon as the said shares were delivered to the plaintiff, and that he frequently duly demanded said stock of the defendants to enable him so to do, and that at all of the times subsequent to the execution of said contract and prior to the time of the commencement of this action it was within the power and was the duty of the defendants to cause said 73,750 shares of the capital stock of said Advance Mineral Company to issue to the plaintiff, but that the said defendants have ever since the making of said contract neglected and refused to cause to be issued to the plaintiff said 73,750 shares or any part thereof of the stock of said Advance Mineral Company to which the plaintiff was and is entitled, except 63,750 shares, and that the defendants did not nor did said Advance Mineral Company or any one for or on behalf of said parties, or either of them, deliver, transfer, or issue or cause to be delivered, transferred, or issued, to the plaintiff or to any one for him, or on his behalf, any other or greater number of shares of the capital stock of said Advance Mineral Company than 63,750 shares thereof, and that plaintiff never received more than 63,750 shares of the capital stock of said Advance Mineral Company."

We construe the foregoing to mean that the plaintiff failed to deposit any shares of stock in trust with W. M. Gottschalk, and that he seeks to excuse his failure in that behalf by the fact that he had received only 63,750 shares of the capital stock of the Advance Mineral Company, and that the defendants neglected and refused after demand upon them to cause to be issued to the plaintiff the other 10,000 shares. This was within defendants' power. It is also averred that it was the duty of the defendants so to do; and, no other source of duty than the contract being before the court, this must be presumed to mean that it was defendants' duty under the contract. That is a question of law. *State ex rel. Leiser v. Koch,* 138 Wis. 27, 119 N. W. 839. The defendants demurred orally to this complaint, the demurrer was sustained, and the plaintiff appealed.

Assuming that the Advance Mineral Company and the Badger Investment Company were Wisconsin corporations

authorized to purchase stock in other corporations, and assuming that the contract did not cover a scheme to defraud the public by the sale of mining stock spurious under sec. 1753, Stats. (1898), because the contract is not challenged in these respects, and because it does not appear what was either the real value or par value of the stock in the Advance Mineral Company or what was the par value of the stock of the Badger Investment Company, we proceed to the consideration of the questions argued.

The paragraphs of the contract beginning with the words "and whereas" are not mere recitals, but create express obligations between the parties to the contract, in those instances where such paragraphs contain words of express agreement. There is such an express agreement on the part of the plaintiff to accept in lieu of the stock held by him in three other corporations 73,750 shares of the capital stock of the Advance Mineral Company, but there is no express agreement on the part of the defendants to procure for delivery to the plaintiff these or any other shares of the capital stock of the Advance Mineral Company. This paragraph assumes the consent of the corporation named, and that all that is required is an agreement on the part of the plaintiff to accept an outstanding and continuing offer of that corporation. In the next paragraph the plaintiff expressly agrees that said stock in the Advance Mineral Company so received by him in exchange for his other shares, except a stated part thereof, shall be held by W. M. Gottschalk as trustee, and the purpose of this trust is shown in the power of the trustee to vote that stock until the trusteeship is released by the directors of the Advance Mineral Company. Performance of this paragraph on the part of the plaintiff would be shown had he not withheld from the trustee the stock actually received by him less 23,750 shares, but deposited this with the trustee and averred that he was unable to procure more from the Advance Mineral Company because prevented by the defend-

ants; but performance is not shown by the averment that, holding 63,750 shares of the stock of the Advance Mineral Company received in exchange, he refuses to deposit any of it in trust because there is rightfully due to him 10,000 other shares which defendants had the power to procure for him, but did not. As heretofore stated, there is no express agreement on the part of defendants that they will procure for the plaintiff the stock of the Advance Mineral Company, and if any such agreement on the part of defendants can be implied from the recitals of this contract it is manifestly not a covenant precedent to the plaintiff's express agreement to deposit the stock received by him in exchange in trust. Why plaintiff surrendered up his shares in the three foreign corporations without receiving the 73,750 shares stipulated for is not apparent, but it is apparent that he did so and received part payment. Why the 10,000 shares in arrears should come out of the shares to be deposited in trust, rather than out of the shares to be retained by plaintiff, is not shown. He then halts in his performance, and refuses to take the next step or proceed further until the defendants, because they have the power to do so, although they have not agreed to do so, procure for him the remaining 10,000 shares. He is in default. Now, whether this is default in the performance of a covenant which must be taken advantage of by the defendants in a counterclaim for damages, or whether the performance of this covenant on the part of the plaintiff is a prerequisite to defendants' performance of the covenant to pay from the sale of stock of the Advance Mineral Company the sum of $5,000, is the question to be determined. This obligation on the part of defendants is expressly made in consideration of such agreement and of $1. The agreement here mentioned must be (1) on the part of the plaintiff to accept in lieu of the shares held by him in the foreign corporations 73,750 shares of the capital stock of the Advance Mineral Company; (2) that said stock so received in exchange except

a certain specified amount should be held by W. M. Gotts-chalk as trustee under the trust terms specified; and (3) sale by defendants of shares of the capital stock of the Advance Mineral Company and payment over of the proceeds of such sale with a fixed amount guaranteed. Performance, there-fore, on the part of the plaintiff of his agreement must ante-date performance on the part of defendants. The time for the plaintiff to deposit his shares in trust must arrive before the time for defendants to pay the sum of $5,000 arrives. This is some indication that performance on the part of de-fendants depends on the prior performance by the plaintiff. *Grant v. Johnson,* 5 N. Y. 247; *Bean v. Atwater,* 4 Conn. 3; *Rider v. Pond,* 18 Barb. 179. The promise of the defend-ants being expressly based upon and in consideration of the agreement by the plaintiff, this is a still further indication in the same direction. *Kaukauna E. L. Co. v. Kaukauna,* 114 Wis. 327, 339, 89 N. W. 542.

Approaching now the substantial nature of the several promises, the ability to sell stock of the Advance Mineral Company from the sale of which this $5,000 should be real-ized and to obtain a suitable price per share might be ma-terially affected by the voting control of the stock. The de-fault of the plaintiff tended to diminish the voting control by the amount of at least 40,000 shares. The parties evi-dently regarded such voting control as desirable, because the plaintiff was to part with the right to vote his shares in the Advance Mineral Company and confer that right upon the trustee, and he was to do this before the defendants were re-quired to attempt the sale of stock of the Advance Mineral Company for the account of the plaintiff. The substantial nature of the obligation therefore agrees with the form and terms of the contract. It is part of the consideration of the contract, and the act to be performed by plaintiff is to pre-cede in time of performance the performance of the defend-ants. *Kellogg v. Nelson,* 5 Wis. 125, and cases cited in

note 3, p. 630, Id.; *Warren v. Bean,* 6 Wis. 120.   If we re-
gard the act of depositing the stock in trust as merely con-
venient, useful, or beneficial to the defendants in enabling
them to make sales, yet the loss and inconvenience arising
from breach of this agreement on the part of plaintiff could
not well be estimated or compensated in damages, and the de-
fendants might refuse to attempt to make any sales, as under
this complaint we must presume they did because of the
failure of plaintiff to perform in this respect.   *Kaukauna E.
L. Co. v. Kaukauna,* 114 Wis. 327, 339, 89 N. W. 542.   If
the defendants, on the other hand, have in fact gone on and
made sales waiving prior performance on the part of the
plaintiff, that constitutes a different cause of action in be-
half of the plaintiff and one that is not averred in the com-
plaint before the court.   From the form of these stipula-
tions, their relations to one another, and the nature of the
stipulation on the part of plaintiff, we are constrained to the
opinion that this default in depositing the stock in trust en-
titled the defendants to refuse to proceed further or to at-
tempt to make or make any sales of the stock to the public,
and hence that liability on their guaranty of a fixed amount
of sales never arose, and that the judgment of the court be-
low must be affirmed.

*By the Court.*—The judgment of the circuit court is af-
firmed.